In the Matter of the Estate of Esther G.
Cronholm, Deceased.
Beth R. Austin, William R. Goshen and Bess W. Baker,
Petitioners-Appellees, v. George C. Kieffer, Exec-
utor of the Estate of Esther G. Cronholm, Re-
spondent-Appellant.

Gen. No. 11,536.

Second District, Second Division.

December 4, 1962.

141

Sam M. Arndt, of Rock Island, for appellant.

Bozeman, Neighbour & Patton, of Moline (Hubbard B. Neighbour, of counsel), for Bess W. Baker and Beth R. Austin, appellees, and Alexander L. Haglund, of Sterling, for William R. Goshen, appellee.

SPIVEY, P. J.

George C. Kieffer appeals from an order of the Circuit Court of Rock Island County in a citation procedure directing him to deliver certain property to the executor of the estate of Esther G. Cronholm. A hearing was first held in the Probate Court of Rock Island County and from an adverse ruling, the respondent took an appeal de novo to the Circuit Court.

Prior to her death, Esther G. Cronholm purchased a savings certificate in the amount of $3500, issued October 1, 1957, by the First National Bank of Rock Island, established a savings account on July 13, 1953, in the amount of $1365.76 in the same bank, and opened a savings account in the amount of $2080.29 in the Rock Island Bank and Trust Company on February 16, 1956. All these accounts were in the names of Esther G. Cronholm and George C. Kieffer with right of survivorship. The provision for survivorship was contained in signature cards relative to the savings certificate and savings account and were signed by Esther G. Cronholm and George C. Kieffer. The form of the signature cards of the accounts of the First National Bank of Rock Island and the Rock Island Bank and Trust Company were identical. They provided as follows:

Esther Cronholm and George Kieffer
Sigs. required ——

FIRST NATIONAL BANK OF ROCK ISLAND,
Rock Island, Illinois

CD 785

Items received for deposit or collection are accepted on the following terms and conditions. This Bank

144

acts only as depositor's collecting agent and assumes no responsibility beyond its exercise of due care. All items are credited subject to final payment and to receipt of proceeds of final payment in cash or solvent credits by this Bank at its own office. This Bank may forward items to correspondents and shall not be liable for default or negligence of correspondents selected with due care nor for losses in transit, and each correspondent shall not be liable except for its own negligence. Items and their proceeds may be handled by any Federal Reserve bank in accordance with applicable Federal Reserve rules, and by this Bank or any correspondent, in accordance with any common bank usage, with any practice or procedure that a Federal Reserve bank may use or permit another bank to use, or with any other lawful means. This bank may charge back, at any time prior to midnight on its business day next following the day of receipt, any item drawn on this Bank which is ascertained to be drawn against insufficient funds or otherwise not good or payable. An item received after this Bank's regular afternoon closing hour shall be deemed received the next business day.

---

AUTHORIZED SIGNATURE

---

AUTHORIZED SIGNATURE

---

---

BUSINESS ADD.             BUSINESS ADD.

---

RESIDENCE                 RESIDENCE

1817 9th St. R. I.

---

| Date Opened | Initial Deposit | Introduced by | Opened by |
|---|---|---|---|
| Oct 1, '57 | $3500.00 | | |

SAVINGS DEPARTMENT
85520                                    EXT. 4 (A. B.)

JOINT ACCOUNT—PAYABLE TO EITHER OR
SURVIVOR

We agree and declare that all funds now, or hereafter, deposited in this account are, and shall be, our joint property and owned by us as joint tenants with right of survivorship, and not as tenants in common; and upon the death of either of us any balance in said account shall become the absolute property of the survivor. The entire account or any part thereof may be withdrawn by, or upon the order of, either of us or the survivor.

It is especially agreed that withdrawals of funds by the survivor shall be binding upon us and upon our heirs, next of kin, legatees, assigns and personal representatives.

Payment to or on check of the survivor shall be subject to the laws relating to inheritance and succession taxes and all rules and regulations made pursuant thereto.

WITNESS:

| | |
|---|---|
| _____ | S/x Esther Cronholm (SEAL) |
| _____ | S/George C. Kieffer (SEAL) |

All the consideration for these accounts and the certificate was furnished solely by Esther G. Cronholm.

After the death of Esther G. Cronholm, George C. Kieffer withdrew all of the above funds and claimed ownership of the funds to the exclusion of the Estate of Esther G. Cronholm. A citation procedure was commenced for the estate by certain of the beneficiaries under the decedent's will. During the hearing on the citation, the parties entered into the following stipulation:

Stipulation of all parties by their respective counsel: That Esther G. Cronholm died on January 31, 1958; that on the date of her death the following accounts or certificates stood in the joint names of Esther G. Cronholm and George C. Kieffer as joint tenants with the right of survivorship as set forth on the signature cards which have been admitted in evidence in this cause pertaining to said accounts and certificate as follows: Savings Certificate Number 795 issued by the First National Bank of Rock Island on October 1, 1957 in the amount of $3500; Savings Account Number 69358 in the First National Bank of Rock Island opened July 13, 1953 and having a balance of $1,365.76, and Savings Account Number 5644 in the Rock Island Bank & Trust Company opened February 16, 1956 and having a balance of $2,080.29. That the monies represented by said accounts and certificate were the sole property of Esther G. Cronholm and that George C. Kieffer made no contribution of his own monies toward them. That George C. Kieffer never had possession of any of the account books or the savings certificate during the lifetime of Esther G. Cronholm. That during the life of Esther G. Cronholm, George C. Kieffer never made any deposits to or withdrawals from any of said accounts or the certificate. That there was also

147

a checking account in the amount of $327.26 in the First National Bank of Rock Island which stood in the names of Esther G. Cronholm and George C. Kieffer with right of survivorship as of the date of death of Esther G. Cronholm and that George C. Kieffer never made any contributions to or withdrawals from said account during the lifetime of Esther G. Cronholm and that said funds at the time of the creation of said account were the sole property of Esther G. Cronholm.

That George C. Kieffer has since the death of Esther G. Cronholm and in his individual capacity withdrawn the funds represented by savings certificate number 795, savings account 69358 and savings account 5644 and holds the monies represented by said accounts and certificate under his own claim of right and further that George C. Kieffer withdrew from the checking account in the First National Bank of Rock Island standing in the name of Esther G. Cronholm and George C. Kieffer as joint tenants with right of survivorship, the sum of $327.26 and deposited said fund in the Estate Account of Esther G. Cronholm but that George C. Kieffer now claims said monies to be his own and personal property.

In addition to the foregoing, the evidence offered by the estate showed that Mrs. Cronholm's attorney had prepared six or seven wills for her during the last ten years. One will was drawn to name George C. Kieffer as executor and the other wills were drawn to make changes in the beneficiaries. Kieffer was named executor of Esther G. Cronholm's last will but he was not designated as a beneficiary.

Mrs. Cronholm's attorney testified, subject to objection by the respondent, that prior to the preparation of the last will for the decedent, the decedent stated that she had $8000 worth of property in Rock Island banks

148

to pass under the terms of her will. He also stated that he discussed the advisability of the decedent holding her property in joint tenancy. He stated that he advised her that joint tenancy might provide available funds in the event she became disabled but told her that he did not agree with the advice she had received from another source to place her property in joint tenancy with her executor.

When Mrs. Cronholm's estate was opened, her attorney then discovered that she had created joint tenancy accounts with Kieffer. He told Kieffer then, that he did not understand from the decedent that the property held in joint tenancy was to belong to Kieffer. At that time Kieffer made no claim to the funds. Kieffer did sign and file an inventory showing personal property estimated at a value of $7000. The only other property inventoried was a checking account, an account in a Vermont Trust Company and income from a trust with a combined value of nearly $3000.

Six weeks to two months later Kieffer came to the attorney's office and for the first time claimed the property.

Officers for the financial institutions whose accounts were involved testified that they explained survivorship to the decedent. One witness stated that the decedent was familiar with the incidents of survivorship prior to the creation of the accounts. He stated that he told Mrs. Cronholm that if something happened to her the money would be payable to Mr. Kieffer. The witness also acknowledged that the decedent's passbooks on the savings accounts and her savings certificate were delivered to him about three weeks prior to Mrs. Cronholm's death. The other banker testified that he explained to the decedent that upon the death of either joint tenant, the funds belonged to the survivor.

A neighbor testified that she had a conversation with Mrs. Cronholm two weeks before Mrs. Cronholm's death and at that time Mrs. Cronholm requested to be taken to the bank so that she could deliver her passbooks and certificate of deposit to the bank for safekeeping. The witness was advised that Mr. Kieffer's name was on the bank books but the decedent did not want the witness to call the Kieffers.

Mr. Kieffer testified that he was a neighbor of the decedent for many years. He mowed her lawn, shoveled snow for her on one occasion, helped her with food and clothing. He did not, however, advise her on financial matters. Signature cards for the funds in question were signed by Mr. Kieffer but he first became aware of the existence of the accounts when the bank books were turned over to him after the death of Mrs. Cronholm. He stated that when he signed the signature cards, he understood that he could withdraw monies from the accounts but admitted that this was never discussed with Mrs. Cronholm, nor did he know that she actually had any funds on deposit in joint accounts with him.

A checking account, which was also held jointly by Mr. Kieffer and the decedent was deposited by Mr. Kieffer is the estate account, and Kieffer stated that he intended to make a claim for these funds also. Mr. Kieffer also testified that he never had possession of the passbooks or savings certificate prior to Mrs. Cronholm's death. He denied that Mrs. Cronholm's attorney told him that in the attorney's opinion, Mrs. Cronholm intended the joint accounts to go into the estates. He admitted that he wrote a letter to a judge asking him to decide who was entitled to the money. The witness also stated that he knew that Mrs. Cronholm could have withdrawn all the money from the accounts and could have closed the accounts. He stated he retained an attorney and took

150

action to secure the money four months after the death of the decedent.

The trial judge filed an opinion in the cause wherein he stated, "From my study of the testimony it is my conclusion that the evidence tends very strongly to negative donative intent."

██ ██ The respondent makes four principal contentions for reversal. He correctly observes that a deposit agreement tends to show donative intent, and in the absence of evidence showing no donative intent, the signed agreement is sufficient to establish ownership in the survivor by virtue of the contract, upon the death of the original owner (In re Estate of Schnieder, 6 Ill2d 180, 127 NE2d 445). He also contends that the decedent's statements, not in the presence of the respondent, are inadmissable. Respondent further contends that exclusive control of the accounts and the power to withdraw all funds has been held not to be decisive of the question of donative intent and finally, respondent contends that where there is no substantial conflict of the evidence, the rule that the findings of the chancellor will not be disturbed unless contrary to the manifest weight of the evidence has little application.

██ Our Supreme Court has only recently had occasion to consider the problem raised by joint tenancy accounts, where, as here, the decedent made all contributions to the account, retained exclusive control of the passbooks and made the only withdrawals from the account. In the case of Frey, et al. v. Wubbena, et al., Docket No. 36972, the decedent owned a great deal of property which he placed in accounts with his daughters. Some of the property in the Frey case consisted of joint accounts set up in conformity with applicable statutory provisions. All of the property here involved was of this kind and so, the pronouncement of the Supreme Court will guide us in

151

deciding the instant case. In the Frey case, the court stated that Section 2(a) of the Statute on joint rights and obligations (Ill Rev Stats, c 76 § 2(a), 1961), has prescribed the manner in which survivorship may be accomplished in joint accounts in Illinois banks. Where there has been an agreement signed by all the parties to the account, statutory rights of survivorship are thereby created. By the same token, Section 4–10 of the Illinois Savings and Loan Act (Ill Rev Stats, c 32 § 770, 1961), contains broad and comprehensive provisions for the creation of rights of survivorship in cases of savings and loan association capital accounts and makes the signing of an agreement among the parties mandatory.

The Supreme Court said, in the Frey case, that where, as here, the accounts were established in conformity with the statutory provisions, application of common law principles in the creation of joint tenancies is dispensed with. However, compliance with statutory form does not preclude a court of equity from looking behind the transaction and determining questions of real and beneficial interest as between the parties. Thus, a court may inquire into facts surrounding the creation of the account to determine the rights of the parties to the account and the true ownership of the account as between the parties.

In effect, the court has said that where the applicable statute has been complied with, evidence of donative intent is not required and a joint account will have been created providing only that form is followed. This does not say, however, that absence of donative intent, affirmatively shown by the person challenging the claimed creation of the joint account may not be considered to determine real and beneficial interest or true ownership.

In the Frey case, the joint accounts were created between father and daughters. The Supreme

152

Court stated that there is a presumption that the placing of title by a father in a child is a gift and that this presumption must be overcome by clear and convincing proof. Such is not the case here, however, where the survivor was not related in any way to the creator of the account.

There was testimony in the Frey case that the decedent wanted his daughters to have the property which he placed in the joint accounts, but there is no such evidence in the instant case. Statements attributed to the decedent of an intent to pass this property under her will constitute strong evidence to the contrary.

Further, the actions of Mr. Kieffer in first making no claim to the property is at least some evidence that he, himself, considered the true ownership to be in the estate after Mrs. Cronholm's death.

Mr. Kieffer's petition for probate of the will shows personal property of the approximate value of $7,000. The executor's bond was in the amount of $14,000. However, if true ownership of the personal property was in Mr. Kieffer, the value of property in the estate would be only a fraction of $7,000.

The trial court found that the evidence tends very strongly to negative donative intent. As we have stated, such evidence may properly be considered, under the rule of the Frey case, to determine real and beneficial interest or true ownership.

We conclude that the evidence shows the true ownership of the various accounts to be in the estate of the decedent and not in the respondent. From our understanding of the evidence, the form of the statute was complied with by the parties but there was never any true ownership of the property in the respondent.

██ We do not agree with respondent's claim that the court erred in the admission of evidence as to

statements of the decedent, not in the presence of the respondent. At the time the testimony was offered, the objection made was that the testimony concerned a conversation outside the presence of the defendant and so, hearsay, and secondly that the conversations were subsequent to the creation of the accounts, and so, the testimony would not show the intent of the decedent at the time the accounts were created. The evidence shows that the conversations took place before and after the execution of the will. One of the accounts was created subsequent to the execution of the will and so, defendant's contention is not well taken with respect to this account.

The court said, "The testimony may go in, subject to the objection, and when I hear the arguments if it appears that this testimony is not proper any part that is not proper will be stricken and will not be considered in arriving at the result, but the witness may answer the question as to the conversation with the decedent." The court also said, "I think your objection may be good but I'll rule on that one later. All I'm saying now is that this is not hearsay. This is what he heard her say. . . . But as to whether she had $8000 is true or not, this doesn't prove that."

The testimony complained of was the reiteration of conversation with the decedent to her lawyer, before and after her will was written. The general subject of the conversations was the advisability of joint tenancy. The lawyer stated that the decedent said she had been advised to put her property in joint tenancy. She was also said to have expressed a desire to dispose of bank accounts in Rock Island by her will. The lawyer also stated that he advised that it might be wise to have a joint tenancy account in the event the decedent became disabled and unable to conduct her own business affairs. There was no ruling other than has been set out here and the court was not

requested or required to rule on the objection after all of the evidence was in. Nevertheless, the respondent says that it is obvious that the court did consider the evidence since the opinion filed by the trial court contains the following language: "Plaintiffs counsel may prepare an order finding that the various accounts and certificates were not intended to be the subject matter of gifts to Mr. Kieffer, but were merely put in joint names for the convenience of the depositor so that she could have money drawn in her behalf if she fell under some disability."

Plaintiffs contend that since there was no ruling requested after all the proof was in, this court cannot consider the objection. In this case, however, it is clear that the court did consider the testimony of the conversation of the decedent and her attorney and so we must consider this objection.

The testimony was not offered to prove the truth of the statements contained in the conversations, but rather to show the intent of the decedent when she subsequently established the accounts. By the same token, evidence of those conversations after the accounts were established was to explain her acts, in establishing the accounts.

Courts have accepted evidence such as offered to aid them in determining if the decedent possessed donative intent when the accounts were created. In connection with this inquiry, then, we are of the opinion that statements of the decedent are competent to show the intent of the decedent, whether it be donative or otherwise.

In In re Estate of Schnieder, 6 Ill2d 180, 127 NE2d 445, the Supreme Court spoke of one of its rulings excluding evidence of inconsistent acts or words of the *parties*. The court said, "From a consideration of the opinion in the Van Vlack case it is clear that the question decided was the materiality of the item of

evidence to show donative intention, and that the statement of the court that 'evidence of the inconsistent words or acts of the parties is not competent' was inadvertent."

On this point, McCormick on Evidence, p 270, says, "Counsel and courts have not until recent decades recognized as widely the probative value and the theory of admissibility of these declarations of intention and design to show conduct, as in the case of the well established practice of receiving similar declarations to show intent or some other mental state which is itself in issue. Nevertheless the modern cases and texts leave no room to doubt the statement that the accepted principle today is that evidence of declarations of a plan, design or intention presently entertained by the declarant is, subject to the usual limitations as to remoteness in time and apparent sincerity common to all declarations of mental state, admissible when offered as evidence that the design was carried out by acts or omissions of the declarant."

In Johnson v. Mueller, 346 Ill App 199, 104 NE2d 651, the Fourth District said, "It has long been recognized by the courts that people sometimes make deposits in banks in more than one name, for convenience only, and with no intent to change the rights in the money. Accordingly, the mere wording of a certificate or bank book is not usually regarded as conclusive, but surrounding facts and circumstances, and declarations of the depositor are admitted for the purpose of determining whether or not there existed donative intent."

Wigmore, in his work, Wigmore on Evidence, states that statements of intent are an exception to the hearsay rule where the intent accompanying an act is material. In Section 1725, he states, "The only limitation as to the use of such statements are those suggested by the general principle of this exception,

156

namely, the statements must be of a present existing state of mind in a natural manner and not under circumstances of suspicion."

Clearly the statement by the decedent to her attorney that she wanted these accounts to pass under her will were of a present existing state of mind and not under suspicious circumstances.

The admissibility of statements of deceased persons has frequently been stated. In Riggs v. Powell, 142 Ill 453, 32 NE 482, the decedent's declarations of intent to provide for his wife were received as evidence of donative intent of the declarant to give a promissory note to his wife.

Declarations of a grantor of an intent to deed land to his son, were held to be evidence of delivery in the case of Waters v. Lawler, 297 Ill 63, 130 NE 335. To the same effect Creighton v. Elgin, 387 Ill 592, 56 NE2d 825, where statements made by a deceased person were held admissible to show delivery of a deed.

We hold that the statements of the decedent were admissible to show donative intent and that the court did not err in receiving this evidence.

■■ ■■ However, to the extent that the court considered statements of a witness made to the decedent, as bearing on the decedent's donative intent, we are of the opinion that the court erred. The only evidence to show that the decedent put the money in joint tenancy for her convenience if she fell under some disability was the statement made by the lawyer to the decedent. The lawyer's statement to the decedent does not show an intent on the part of the decedent. However, we feel that this error was harmless in view of the evidence properly admitted to show the absence of donative intent.

■■ ■■ Respondent contends that exclusive control and the power to withdraw all funds is not in and

of itself decisive of the question of donative intent. This is true. However, evidence of exclusive control would be some evidence of the absence of donative intent. Also, the failure of the survivor to assert any control or make withdrawals would seem to be evidence of the true ownership of the property.

Respondent contends that Illinois Trust & Sav. Bank v. Van Vlack, 310 Ill 185, 141 NE 546, supports his position. The rule of the Van Vlack case is not inconsistent with the position we take. Evidence of retention of the passbook and the power to withdraw all funds does not exclude all evidence and terminate the inquiry, but it does afford evidence as to the true ownership of the property.

Finally, respondent contends that the evidence is not conflicting and the rule that the findings of the Chancellor will not be disturbed unless against the manifest weight of the evidence has little application. (Gilbert v. Chicago Title & Trust Co., 7 Ill2d 496, 131 NE2d 1.) We agree with the findings of the Chancellor, however. The actions of the decedent appear to us to be form only. True ownership seems to have been intended to remain in the decedent and to pass under her will. The trial court found that the evidence very strongly negatived donative intent. For the reasons herein stated, the decree of the Circuit Court of Rock Island is affirmed.

Affirmed.

CROW and WRIGHT, JJ., concur.