No. 46,162

In the Matter of the Estate of Charles K. Matthews, Deceased, (MARVIS KOS, *Appellant,* v. PATRONS STATE BANK & TRUST CO., Executor of the Estate of CHARLES K. MATTHEWS, Deceased, and MAURICE HUBBARD, Guardian Ad Litem, *Appellees.*)

(493 P. 2d 555)

Opinion filed January 22, 1972.

*Max Logan,* of Payne and Jones, Chartered, of Olathe, argued the cause and was on the brief for the appellant.

*James H. Bradley,* of Olathe, argued the cause and was on the brief for the appellee executor.

*Maurice Hubbard,* of Olathe, was on the brief as guardian *ad litem.*

The opinion of the court was delivered by

SCHROEDER, J.: This appeal arises out of proceedings instituted by the petitioner (appellant) to determine the ownership of a bank account. In the trial court all issues presented by the petitioner were determined adversely to her.

The issue presented is whether the funds in a bank account constitute a part of the assets of the estate of Charles K. Matthews, deceased, or whether the petitioner is entitled to the funds in the account alternatively alleged and claimed as (1) a donee beneficiary; (2) a surviving joint tenant; or (3) one-half thereof as a cotenant.

The executor of the estate of Charles K. Matthews contends the account in question is a part of the decedent's estate, and that the petitioner was authorized to draw on the testator's business account solely for the accommodation of Charles K. Matthews during his lifetime.

The basic facts giving rise to this controversy are as follows:

Charles K. Matthews and Katie O. Matthews, husband and wife, had two natural children. Marvis Kos (petitioner-appellant), a daughter, worked for her father in his business for thirty-three years at an hourly wage rate. The business was known as the Iron Hand Tool Works located at Stilwell, Kansas. Joan Alice Matthews is an adult incompetent daughter. Marvis Kos is the legal guardian of Joan Alice Matthews in Jackson County, Missouri.

Charles K. Matthews and Katie O. Matthews, his wife, of Bucyrus, Kansas, from and after August 9, 1957, had a joint tenancy bank account in the State Bank of Stanley, Stanley, Kansas, by virtue of a "Depositor's Contract and Signature Card" executed that date. (Defendants' Exhibit A.)

For all practical purposes the format of the "Depositor's Contract and Signature Card" is identical to the one which was the subject of litigation in *In re Estate of Johnson,* 202 Kan. 684, 452 P. 2d 286.

Defendants' Exhibit A in the upper right-hand corner showed the account to be a business account entitled:

"Iron Hand Tools Works
C. K. Matthews
Stilwell, Kansas"

There followed a provision that the bank was authorized to recognize any of the signatures "subscribed below" in payment of funds or the transaction of any business for the account. In the blank space provided the word "Joint" was written to indicate the kind of account (four alternatives were indicated: individual, joint, partnership or corporation). Following were the signatures of both C. K. Matthews and Katie O. Matthews. Near the bottom of the front side of the card appeared the words "Depositor's Contract," followed by seven paragraphs in small print, which continued to the back of the card. One of these paragraphs specifically referred to "Joint Accounts" and provided that all sums on deposit or later deposited by either or both of said joint depositors, were to be owned by them jointly, with right of survivorship, and were subject to check or receipt of either of them or the survivor of them.

Other paragraphs specifically referred to partnership accounts and corporation accounts.

Directly following the last provision of the "Depositor's Contract" on the back of the card appeared the statement, "The terms of the above contract have been read and are hereby agreed to by owner of account." Following were two signature lines which were signed by C. K. Matthews and Katie O. Matthews.

On May 23, 1967, a joint and mutual will was executed by Charles K. Matthews and Katie O. Matthews.

On June 17, 1967, Katie O. Matthews died.

On November 4, 1968, another "Depositor's Contract and Signature Card" (plaintiff's Exhibit 1) was filed with the bank entitled:

"Iron Hand Tool Works
C. K. Matthews or
Marvis Kos"

It will be described in more detail later.

Charles K. Matthews died testate on December 10, 1968. Under the joint and mutual will of Charles K. Matthews and his wife the estate passes to a trust for the benefit of Joan Alice Matthews during her lifetime with any unexpended income going to a grandson and two great-grandchildren upon Joan's death.

On December 20, 1968, in the probate court of Johnson County, Kansas, a petition for probate was filed in the estate of Charles K. Matthews, deceased. On January 15, 1969, Marvis Kos filed an answer denying the will which was ultimately admitted to probate on January 31, 1969. Letters testamentary were issued to the

executor, the Patrons State Bank and Trust Company. On the 20th day of March, 1969, an inventory and appraisal was filed by the executor showing total assets of $75,486.95, as amended May 12, 1969. The bank account in question with the State Bank of Stanley, No. 10-004-8, in the amount of $28,916.08 was inventoried as a part of the decedent's estate with a parenthetical note "Claimed by Marvis Kos."

On April 4, 1969, Marvis Kos filed a petition as guardian of Joan Alice Matthews requesting the probate court to determine a proper amount for the trustee to pay petitioner for the support of her sister. (Petitioner was appointed guardian on February 6, 1969.)

On April 23, 1969, Marvis Kos filed a petition in the estate of Charles K. Matthews, deceased, to strike the bank account with the State Bank of Stanley, No. 10-004-8, in the amount of $28,916.08 from the inventory, alleging:

"3. Said account was established prior to the death of Charles K. Matthews, deceased, as a joint account with the right of survivorship in Marvis Kos and the balance of the account should be set aside to Marvis Kos as the survivor."

This petition was heard on May 12, 1969, and denied on May 13, 1969, following which appeal was duly perfected to the district court on June 12, 1969.

After the death of Katie O. Matthews in June, 1967, the bank account, No. 10-004-8, in the State Bank of Stanley was continued in the name of Charles K. Matthews only, and he continued to make deposits and withdrawals therefrom. On or about the 1st day of November, 1968, Charles K. Matthews sold his business known as the Iron Hand Tool Works, including the equipment and inventory, for the sum of $31,000, and the proceeds from the sale upon payment were deposited in account No. 10-004-8.

Prior to the 4th day of November, 1968, Marvis Kos was not authorized of record to withdraw funds on the checking account established in the name Iron Hand Tool Works. On November 4, 1968, there was delivered to the State Bank of Stanley a "Depositor's Contract and Signature Card" (plaintiff's Exhibit 1) entitled:

"Iron Hand Tool Works
C. K. Matthews or
Marvis Kos"

The format was identical to defendants' Exihibit A. It bore the date of November 4, 1968, and under "Remarks" had the number of an account, 10-004-8. The signatures of C. K. Matthews and Marvis

Kos were subscribed twice on the front of the card at the place provided for signatures. It was signed at the place provided on the reverse side of the card by Marvis Kos only. On the face of the card the space provided to indicate the kind of account was left blank.

The trial court found the Depositor's Contract and Signature Card marked plaintiff's Exihibit 1 was not completed and was ambiguous. It thereupon heard extrinsic evidence to determine the nature of the account. The substance of the testimony given in the trial court follows:

On Saturday, November 2, 1968, at the request of Marvis Kos, one Laura Fisher, a teller at the State Bank of Stanley, drove to the Matthews residence at Bucyrus and took a new signature card to Charles K. Matthews. The Depositor's Contract and Signature Card, which is in evidence as plaintiff's Exihibit 1, was undated but had the typed heading as it now appears showing that the name of Marvis Kos had been added. Marvis Kos was present when the card was delivered, and the card was not then signed but laid on the table. Laura Fisher showed the card to Charles K. Matthews, calling his attention to the fact that Marvis Kos' name had been added on the heading.

Charles K. Matthews was not feeling well at this time and entered the hospital on Monday, November 4, 1968, at 7:00 a. m. The card was signed by C. K. Matthews at about 5:30 or 6:00 a. m. on November 4, 1968, in the presence of Marvis Kos. On cross-examination Marvis Kos testified her father "was real anxious to get it signed so he could go to the hospital." The reason he gave for not signing the back side of the card was, according to the testimony of Marvis Kos, "I have signed it twice on the front, and that's enough. It's yours when I'm done with it anyway and there's no use of me signing anymore."

The card (plaintiff's Exhibit 1) was picked up at the business location of the Iron Hand Tool Works by Laura Fisher for the State Bank of Stanley, subsequent to a telephone call from Marvis Kos, and it was returned to the bank.

Laura Fisher said she typed plaintiff's Exhibit 1 based on the conversion she had with Marvis Kos, that Mr. Matthews wanted her to sign checks on the account; that there were some bills that needed to be paid, and Mr. Matthews was not able to sign checks at this time. According to Laura Fisher Mr. Matthews did not tell

her what kind of an account he wanted; he just said he needed Marvis' signature on it so she could take care of bills when he wasn't able. She told both Mr. Matthews and Marvis there would have to be signatures on the reverse side of the card. (Plaintiff's Exhibit 1.)

Without instructions Laura Fisher dated and put the former account number (10-004-8) on the card and it was classified by the bank as a "business account," such classification being for the bank's convenience. Laura Fisher testified she did not notice the blank space on the face of the signature card, "and that is an oversight on my part, because I probably would have typed in 'Joint', taken it from the other card."

The business of Charles K. Matthews ceased being an active business in early October, 1968, and was sold on November 1, 1968, but Laura Fisher did not know the business had been sold when she filed the card. (Plaintiff's Exhibit 1.)

Subsequent to November 4, 1968, Charles K. Matthews wrote no checks on the account, while Marvis Kos wrote ten checks on it between that time and her father's death. She also wrote two checks after his death. About December 1, 1968, an agent of the realtor who negotiated the sale of the business took a check for the purchase price to Charles K. Matthews at the hospital where he endorsed it, with the realtor then depositing the check to the account in question at the State Bank of Stanley.

After the death of Charles K. Matthews on December 10, 1968, the bank refused to honor a check drawn on the account by Marvis Kos to close the account, and returned the check to her marked "Principal Deceased."

Marvis Kos testified her father wanted these papers (plaintiff's Exhibit 1) completed and "he said the account will be yours when everything is over. He did in fact say that the account would be mine." She further testified when her name was added to the account there was approximately $1,200 to $1,500 in the account.

Marvis Kos testified at the time of her father's death she held one other bank account with her father at the First National Bank at Louisburg; that she had been on that account for about a year and there was $853.08 in the account. She withdrew that amount of money from that bank. There was also another account at the Anchor Savings and Loan Association in Overland Park as joint tenants, which she and her father had. The passbook was given

in both of their names, and her father terminated the joint tenancy account with the Anchor Savings and Loan Association. Marvis found this out when going through the papers at the house after his death.

Ella Kline had a discussion with Charles K. Matthews in the middle of October, 1968, concerning a bank account. The conversation took place in the shop at Stilwell. Mr. Matthews complained to her that he had not been feeling well and she suggested that he wasn't getting any younger. She then testified, "I suggested that he be sure to have all his legal affairs in order and without any further prompting from him, he said he did have, that through a will, Alice was taken care of and anything in the bank belonged to Marvis."

The president of the State Bank of Stanley, James McAnelly, testified that Charles K. Matthews had only one account with the bank and it had account No. 10-004-8; that he had no personal knowledge of any of the circumstances surrounding the signing or the preparation of plaintiff's Exhibit 1 bearing the date of November 4, 1968. That as a general practice the bank requires, before it will honor any checks drawn on an account, a signature card, with a signature on the front of the card, as well as on the reverse side of the card. He never had any conversation with Charles K. Matthews as to what kind of an account was to be established by the card signed November 4, 1968. He was familiar with the $29,000 deposit on December 2, 1968, by the real estate agent (a down payment having previously been made).

He further testified defendants' Exhibit A was the signature card which existed on the account prior to the filing of plaintiff's Exhibit 1. He said, "The bank cannot transfer funds from one account to another simply by the signing of a signature card. There would have to be a check drawn on the prior account. There was no check drawn here." He said, "The bank usually requires even in a convenience signature situation, that both the owner's signature and the convenience signature be on the front and the back of the card as well, in order to have the contract completed. It has to be signed on both sides to be a completed contract. I am not saying that Mr. Matthews could not have signed checks in this matter, because we have another card in our file that he signed on the back. Plaintiff's Exhibit Number I does not supersede Defendants' Exhibit A. I consider the Plaintiff's Exhibit Number I a total nullity."

The first point raised by the appellant is a procedural matter, one which this court has never been called upon to determine, where the ownership of funds in a bank account is disputed. The procedural history of the case, therefore, becomes significant.

After the probate court determined the matter adversely to the appellant, she changed counsel to perfect her appeal to the district court. Thereafter, her counsel filed in the district court of Johnson County, Kansas, a motion for summary judgment, alleging in substance that plaintiff's Exhibit 1 filed with the State Bank of Stanley November 4, 1968, was clear and unambiguous on its face and established the ownership of the account in Marvis Kos. This motion was overruled November 3, 1969.

After the guardian *ad litem* filed his answer, counsel for the appellant on November 5, 1969, filed a motion praying that the district court find and determine that this was an action to: bring property into the estate, rather than to take property out of the estate, alleging that the probate court had no jurisdiction to hear said action. It requested the district court to dismiss the action on the ground that the probate court had no jurisdiction, or in the alternative, prayed that the district court compel the executor to file amended pleadings to accurately present the question concerning the ownership of the account to the district court, that is, to frame the matter as an action to bring property back into the estate of C. K. Matthews. The appellant also requested the district court to find and determine that under K. S. A. 58-501, at least one-half of the bank account at the State Bank of Stanley, Kansas, account No. 10-004-8, be set aside to Marvis Kos.

On the 7th day of November, 1969, after a hearing the trial court overruled the appellant's motion for dismissal, and also overruled her alternative motion to compel the executor to file proper pleadings. It deferred any ruling on K. S. A. 58-501.

After the trial in which both the appellant and the appellees presented evidence the trial court determined (1) that no *inter vivos* gift was made by C. K. Matthews to Marvis Kos of the account; (2) that there was no joint tenancy account created; and (3) that the appellant would take nothing under the operation of K. S. A. 58-501. Accordingly, it entered judgment for the executor.

The appellant contends the trial court erred in overruling her motion seeking to dismiss the action on the ground that the

probate court had no jurisdiction, and in overruling her alternative motion requesting the district court to compel the executor to file amended pleadings to accurately present the question concerning the ownership of the account to the district court.

Generally speaking, when the purpose of an action or claim is to bring something into an estate of a decedent, that is, when an estate has a claim which its personal representative is attempting to enforce, the action is to be filed in the district court or some other court of competent jurisdiction. (*In re Estate of Thompson*, 164 Kan. 518, 190 P. 2d 879; *Hildenbrand v. Brand*, 183 Kan. 414, 327 P. 2d 887; and authorities cited in these cases.) The appellant contends this is not an attempt to get property out of the estate of Charles K. Matthews, deceased.

The appellant characterizes this action as one in which the executor lists as an asset of the estate property which it knows stands in the name of another, being Marvis Kos, as a portion of the inventory of the estate. The appellant relies on *In re Estate of Slaven*, 177 Kan. 185, 277 P. 2d 580. There, when the administrator of the estate qualified, he found deeds to various parcels of real estate executed by the decedent in her lifetime in the hands of grantees named therein with the grantees in possession of the real estate. Delivery of the deeds was accomplished prior to the death of the decedent but they were not placed of record until five days after her death. There was some litigation over the appointment of an administrator and he was not actually appointed until after the record title to the tracts of land stood in the names of various grantees. The administrator proceeded to place such real estate on the inventory, and the grantees named in the deeds filed motions to strike such property from the inventory. The court held the action was to adjudicate the title to real estate and had for its purpose bringing property into the estate, and that the action was one in which the probate court did not have jurisdiction.

For reasons hereafter stated, we do not think the *Slaven* case controlling and find it distinguishable.

First, the jurisdiction of the probate court to determine the matter in the instant case is moot. The only advantage the appellant might possibly gain from a favorable decision on the point, after having appealed the matter to the district court, would be to shift the burden of proof to the executor. Here the appellant in the probate court requested that court to adjudicate the subject

bank account a joint tenancy account, and that it be stricken from the inventory filed by the executor. The probate court's jurisdiction was never questioned and no appeal was taken to the district court on that issue. The jurisdictional point was first raised by the appellant's motion in the district court on November 5, 1969, after appeal had been perfected, wherein she asked the district court to dismiss her action on the ground that the probate court had no jurisdiction, or to require pleadings which, in effect, would shift the burden of proof to the executor. The probate court was never requested to certify the appellant's petition to the district court because it was without jurisdiction under the provisions of K. S. A. 59-2402.

In the *Slaven* case the jurisdiction of the probate court was challenged, and it thereupon certified the question to the district court.

Assuming the question is here for determination at this time, in the *Slaven* case the title to the tracts of real property in question stood in the names of the heirs by reason of deeds which had been executed and delivered to them by the decedent in her lifetime. Here the appellant's assumption that the funds in the bank account in question stood in the name of Marvis Kos is not an established fact, but an issue to be determined. It is the ownership of these funds which is controverted. Whether the instrument upon which the appellant relies (plaintiff's Exhibit 1) is ambiguous or not is an issue to be determined, and, if so, what does the extrinsic evidence establish? There is also a question as to whether the funds claimed by Marvis Kos were in the account evidenced by plaintiff's Exhibit 1. In other words, whether the probate court had jurisdiction is dependent upon the determination of independent questions of fact and law. The issues were all determined adversely to the appellant in the district court. On the basis of these determinations, if affirmed, the executor in this case properly inventoried the funds in question as part of the estate of C. K. Matthews, deceased, and the burden of the proof was cast upon the appellant in the district court to establish her claim to the funds in the account.

Various procedures have been used in recent cases where the ownership of funds in a bank account was questioned, but the jurisdiction of the probate court was never challenged. In the case of *In re Estate of Johnson*, 202 Kan. 684, 452 P. 2d 286, modified on rehearing 203 Kan. 262, 452 P. 2d 286, the executor included the

disputed bank account in his inventory of the assets of the estate and the claimant petitioned to strike it from the inventory. In the case of *In re Estate of Smith,* 199 Kan. 89, 427 P. 2d 443, the funds in a disputed savings account were not inventoried, and the heirs of the decedent raised the issue by an answer to the adminstrator's petition for final settlement. In the case of *In re Estate of Fast,* 169 Kan. 238, 218 P. 2d 184, the action was instituted in the probate court by the surviving joint tenant filing a claim against the estate.

By the pleadings filed in the district court here, the appellant was permitted to enlarge and expand the issues to be decided beyond the scope of the issues determined in the probate court. We shall consider these issues in the order in which the appellant presents them on appeal.

The appellant contends the trial court erred as a matter of law in overruling her motion for summary judgment and in determining that the Depositor's Contract governing account No. 10-004-8 with the State Bank of Stanley was ambiguous. The appellant contends the account card (plaintiff's Exihibit 1) upon which she relies, is unambiguous and reflects on its face that Marvis Kos is the owner of said account.

It is the appellant's position that Marvis Kos is the only signatory to the Depositor's Contract, although C. K. Matthews and Marvis Kos were authorized to draw on the account. It is argued that the failure of C. K. Matthews to sign the Depositor's Contract establishes that he is not the depositor and in no way has any claims on the account, and therefore, the owner of the entire account is clearly, unequivocally and unambiguously Marvis Kos, not as surviving joint tenant, but on the basis that she is the depositor who owned the account.

The "Depositor's Contract and Signature Card" constitutes a contract in writing between the depositor and the bank, and the nature of the contract is to be determined as of the time the account is established. (*In re Estate of Smith,* supra.)

If it becomes necessary to go beyond the written evidence of such contract to establish the intention of the depositor, the inquiry should be confined to the time the contract was entered into, without reference to subsequent events or circumstances, since it is only the intention of the depositor at the time of the creation of the account that is material. (See *Brewer v. Schammerhorn,* 183 Kan. 739, 332 P. 2d 526.)

The fallacy in the appellant's position with respect to the "Depositor's Contract and Signature Card" upon which she relies (plaintiff's Exihibit 1) is that the depositor's contract which she alone signed specifically makes reference to three types of account, one paragraph being devoted to each—joint accounts, partnership accounts and corporation accounts. With the signatures of C. K. Matthews and Marvis Kos appearing on the face of the exhibit, and a blank space left where the type of the account was to be noted, the instrument is ambiguous. The omission can be supplied only by parol evidence confining the inquiry to the time the contract was entered into.

When this is done, what funds does the evidence disclose that Marvis Kos deposited? There is no evidence that she deposited any money to this particular account. The fact that the account, if any, evidenced by plaintiff's Exhibit 1, is numbered 10-004-8, is of no significance. This particular number was assigned by the bank to the account evidenced by defendants' Exhibit A, solely for the convenience of the bank. There was no agreement or understanding between the bank and Charles K. Matthews when plaintiff's Exhibit 1 was executed. Furthermore, the evidence discloses there was no transfer of funds from the individual account of Charles K. Matthews evidenced by the "Depositor's Contract and Signature Card" (defendants' Exihibit A) carried in joint tenancy with his wife, prior to her death. The funds were in the account evidenced by defendants' Exhibit A, which stood in the name of C. K. Matthews, when plaintiff's Exhibit 1 was filed with the bank.

The testimony of Laura Fisher to the effect that she would have written the word "Joint" on the face of plaintiff's Exhibit 1 in the space provided, had she noted the omission, is immaterial. Such testimony does not evidence an intention of Charles K. Matthews with respect to the establishment of the account, if any, created by plaintiff's Exhibit 1.

The appellant's motion for summary judgment was properly overruled by the trial court, and it did not err in determining that plaintiff's Exhibit 1 was ambiguous.

The appellant's contention, that the trial court erred in determining that no valid *inter vivos* gift was made of account No. 10-004-8 by C. K. Matthews to Marvis Kos, is also premised upon the "Depositor's Contract and Signature Card" evidenced by plaintiff's Exhibit 1.

The appellant cites the court to *Hudson, Administrator v. Tucker,* 188 Kan. 202, 361 P. 2d 878, particularly Syllabus ¶ 3, wherein the court set forth the requisites to establish a valid gift *inter vivos,* stating there must be ( *a* ) an intention to make a gift; ( *b* ) a delivery by the donor to the donee; and ( *c* ) an acceptance by the donee. The gift must be absolute and irrevocable.

The evidence argued by the appellant to support her position on this point is based on her testimony, that her father was adamant that she get a card to establish the bank account with her name on the account, so that upon his death the appellant would take what was in the bank; and the further testimony that her father refused to sign the Depositor's Contract even though urged to do so on the basis that his signature on the front of the card was sufficient. This evidence, it is argued, clearly indicates the intention of Charles K. Matthews that the account was to be a gift at the time to Marvis Kos. The appellant also relies on the testimony of Mrs. Kline in mid-October, 1968, concerning a conversation she had with Mr. Matthews involving his property in which he indicated everything was taken care of and that anything in the bank would be Marvis Kos'.

The trial court found no valid *inter vivos* gift was made to Marvis Kos of the funds on deposit in account No. 10-004-8 by Charles K. Matthews, and the record discloses sufficient evidence to support the finding.

Assuming that the trial court believed the testimony of Marvis Kos that on November 4 her father stated to her, "I want that card and I want to sign it because that's yours in case anything happens," and assuming that the decedent was referring to his death, this does not indicate an intention on his part to make a delivery of his account to Marvis Kos unconditionally, which is a requisite to establish an *inter vivos* gift. Can it be said Charles K. Matthews prior to his death placed beyond his control ownership in the proceeds of the subject account? He could up to the day of his death still have drawn upon the account, even to the extent of withdrawing all of the proceeds by his check if he so desired.

The refusal of Charles K. Matthews to sign his name on the reverse side of plaintiff's Exhibit 1 would imply that he did not intend to make a gift or establish a joint tenancy. By the appellant's own testimony, she stated that he had previously terminated a joint tenancy account with her at the Anchor Savings and Loan

Association in Overland Park. This, and the prior joint tenancy account with his wife, would substantiate that he knew what a joint tenancy account was, and particularly the survivorship effect of such account.

Mr. Matthews also had another bank account with the First National Bank in Louisburg in joint tenancy with the appellant, which was in existence for approximately one year prior to his death. In mid-October, 1968, when he had a conversation with Ella Kline can it be said Mr. Matthews did not have in mind the Louisburg bank? He was still doing business in mid-October, and the sale of his business was not consummated by contract until November 1, 1968, the bulk of the proceeds therefrom not having been deposited until December 2, 1968.

The testimony of Mrs. Fisher fortifies the fact that Mr. Matthews had knowledge as to the requisites necessary to establish a joint tenancy account. According to Mrs. Fisher, when the appellant appeared at the bank and requested that Mrs. Fisher bring a signature card to the decedent's home, for him to sign with Marvis Kos, the only purpose stated was the bills had to be paid and Charles K. Matthews was not able to sign the checks. Charles K. Matthews stated to Mrs. Fisher the reason he wanted Marvis Kos' signature on the card was so that she could take care of bills when he was not able.

The mere expression of a desire on the part of the owner of a two-party bank account that the survivor should have the funds upon his death is not legally sufficient to affect a transfer of title at his death, nor is it sufficient as a gift. (*Bowen, Administrator v. Hathaway,* 202 Kan. 107, 446 P. 2d 723.)

The appellant contends the trial court erred in determining that the Depositor's Contract and Signature Card governing account No. 10-004-8 (plaintiff's Exhibit 1) did not create a joint tenancy between C. K. Matthews and Marvis Kos.

Whether a joint tenancy bank account is created in the name of a depositor and another must be determined on contract principles. (*In re Estate of Smith,* 199 Kan. 89, 427 P. 2d 443.) The all-important factor in the establishment of a valid joint tenancy bank account is the clarity with which the intent of the depositor is expressed at the time the transaction is initiated. (*In re Estate of Johnson,* 202 Kan. 684, 452 P. 2d 286, Syl. ¶ 7; *Miller v. Higgins,* 188 Kan. 736, 336 P. 2d 257; and K. S. A. 58-501.)

It has been said that if the depositor executes an account signature card which contains as part of its provisions an agreement in clear and unambiguous language that a joint tenancy account with the right of survivorship was intended, then such an account is created and the agreement is enforceable according to its terms. In such case, the signature card constitutes a contract in writing between the depositor and the bank, and parol evidence of an understanding at variance with its terms cannot be considered. *(In re Estate of Smith,* supra; *Simonich, Executrix v. Wilt,* 197 Kan. 417, 417 P. 2d 139; and *In re Estate of Johnson,* supra.) When, however, the language of the written instrument signed by the depositor is uncertain or ambiguous, parol evidence relating to the facts and circumstances existing prior to and contemporaneously with the execution of the instrument is admissible in order to clarify the intention of the depositor at the time of the creation of the account. *(In re Estate of Johnson,* supra.)

Without question in this case plaintiff's Exhibit 1 was ambiguous as a matter of law, and the trial court did not err in so finding and in hearing extrinsic evidence.

It has been held that when a two-party account is opened without the use of a signature card or an instrument in writing signed by the depositor, a valid joint tenancy account between the depositor and bank may nevertheless be proved by parol evidence if the terms of the agreement clearly disclose that a joint tenancy was intended to be established. *(In re Estate of Johnson,* supra.)

The provisions of K. S. A. 58-501 do not preclude proof by oral evidence of an oral joint tenancy contract, but require that the terms of such contract clearly disclose that a joint tenancy was intended to be established. *(Edwards v. Ledford,* 201 Kan. 518, 441 P. 2d 834.)

Many of the authorities reveal fact situations where all parties, including representatives of the bank, met and entered into an agreement, either oral or written, whereby a joint tenancy account was created. (See *Simonich, Executrix v. Wilt,* supra.)

Other authorities reveal fact situations where the purported surviving joint tenant had little or no knowledge of the creation of the joint tenancy estate, thereby giving rise to a donee beneficiary situation resulting from the contract between the depositor and the bank. *(Spark v. Brown,* 167 Kan. 159, 205 P. 2d 938; *Asche v. Matthews,* 136 Kan. 740, 18 P. 2d 177; *Miller v. Higgins,* supra; and *In re Estate of Smith,* supra.)

There is no evidence in this case that the decedent, Charles K. Matthews, conveyed an intention to create a joint tenancy to the State Bank of Stanley when plaintiff's Exhibit 1 was filed with the bank. The only evidence touching upon this point is the testimony of Laura Fisher as to a conversation with the decedent sometime previous to her visit at the home, when she delivered plaintiff's Exhibit 1. At that time Charles K. Matthews stated to her he needed the signature of Marvis Kos on the account so she could take care of the bills when he was not able. At no time did he ever tell Laura Fisher or any other official at the bank what kind of an account he wanted. This is further corroborated by the testimony of the appellant when she appeared at the bank and stated that her father wanted her name on the account because there were some bills that needed to be paid, and that her father was not able to sign checks at this time.

From the foregoing it is apparent the trial court did not err in finding the evidence insufficient to clearly express the intention of Charles K. Matthews to establish a joint tenancy as required by K. S. A. 58-501. (*In re Estate of Johnson*, supra; and *Edwards v. Ledford*, supra.)

The testimony of Laura Fisher that it was an oversight on her part that she did not type the word "Joint" in the blank space provided on plaintiff's Exhibit 1, by taking "it from the other card," is not clear and convincing evidence. She received no such directions even though she recalled telling the appellant and Charles K. Matthews at the time she delivered the signature card (plaintiff's Exhibit 1) that there would have to be signatures on the reverse side.

The officials of the State Bank of Stanley were not entitled to speculate or guess as to what kind of an account was to be created by plaintiff's Exhibit 1. In the case of *In re Estate of Johnson*, supra, it was said:

". . . In our opinion, the words 'joint account' standing alone without further explanation do not imply a true joint tenancy was intended to be established. . . ." (p. 697.)

There it was held on rehearing, since the Depositor's Contract and Signature Card was ambiguous for lack of signatures on the reverse side, parol evidence was admissible on a retrial to ascertain the intent of the depositor. (*In re Estate of Johnson*, 203 Kan. 262, 452 P. 2d 286.)

An analogous case on the facts and the issues here presented is *Pace v. First National Bank of Osawatomie, Kansas,* 271 F. Supp. 230 (D. C. Kan. 1967).

Here Charles K. Matthews during his life had executed his will and the primary beneficiary was Joan Alice Matthews, an incompetent daughter, who was represented throughout all of these proceedings by her guardian *ad litem.* Upon a careful review of the record it cannot be said the trial court erred in finding that plaintiff's Exhibit 1 did not create a joint tenancy between C. K. Matthews and Marvis Kos.

Lastly, the appellant contends that in the event the trial court was not erroneous in its rulings concerning the ownership of the account being in Marvis Kos, as a result of either construction of plaintiff's Exhibit 1, her theory of an *inter vivos* gift or joint tenancy, then the trial court erred in determining, as a matter of law, that K. S. A. 58-501 did not create a cotenancy in said account between Marvis Kos and Charles K. Matthews, which would entitle Marvis Kos to one-half of the proceeds in said account.

The appellant takes the position that 58-501, *supra,* establishes a statutory right to a minimum of one-half of the account in situations where there has been a grant or devise of real or personal property to two or more people. The appellant calls our attention to the fact that the statute does not say *may* create but says *shall* create in them a tenancy in common, so long as there has been a grant or devise of the property.

The appellant stresses the delivery of plaintiff's Exhibit 1 to her from the decedent and argues this signifies an intention to create a tenancy in common, distinguishing it from *Pace v. First National Bank of Osawatomie, Kansas,* supra.

The appellant also stresses that she was the only one who wrote checks upon the account after plaintiff's Exhibit 1 was returned to the State Bank of Stanley.

The difficulty with the appellant's theory is that it assumes there to have been a grant, transfer or an agreement establishing an intent to create ownership of property in two or more persons. Under the circumstances here presented this is a question of fact which must be established by competent evidence.

In *Pace v. First National Bank of Osawatomie, Kansas,* supra, the court held:

"Where evidence was inadequate to establish joint tenancy accounts, title to one-half of the accounts did not exist in plaintiff as a tenant in common since same evidence surrounding institution of the accounts also negatived any claim of title or property right in plaintiff at that time. K. S. A. 58-501." (Syl. ¶ 9.)

Upon all the evidence presented by the record we cannot say the trial court erred in finding that Marvis Kos was not a tenant in common with Charles K. Matthews on the bank account in question. The evidence supports the trial court's finding that the signature of Marvis Kos was placed upon the account for the convenience of Charles K. Matthews only.

Accordingly, the burden of proof was properly cast upon the appellant in the trial of the issues in the district court.

The judgment of the lower court is affirmed.