No. 47,812

In the Matter of the Estate of James B. Wood, Deceased (ROBERT V. WOOD, OTHO T. WOOD, J. C. WOOD, LAURA BERWICK and MINNIE E. BURFORD, *Appellants,* v. ROBERT DAVIES, Individually and as Executor of the Estate of James B. Wood, Deceased, *Appellee.*

(545 P. 2d 307)

Opinion filed January 24, 1976.

*Milo M. Unruh,* of Arn, Mullins, Unruh, Kuhn & Wilson, of Wichita, argued the cause and was on the brief for the appellants.

*Kerry McQueen,* of Liberal, argued the cause, and *Michael P. Dreiling,* of Liberal, was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: The question presented by this appeal is whether

the trial court properly determined that three certificates of deposit, the subject of this action, were owned in joint tenancy.

The decedent, James B. "Pete" Wood, left five surviving heirs and residuary legatees (plaintiffs-appellants) who brought this action against Robert Davies (defendant-appellee), individually and as executor of the estate of James B. Wood.

The decedent in his lifetime banked with the First National Bank of Liberal, Kansas, and at the time of his death in August of 1972 left three certificates of deposit in the bank, each carrying substantially the following legend:

"NAME James B. Wood or Robert Davies ADDRESS 715 N. Sherman, Liberal, Ks. HEREINAFTER REFERRED TO AS OWNER HAS DEPOSITED IN THIS BANK Five thousand and 00/100————DOLLARS $5,000.00 Payable to said owner, or, if more than one, to either or any of said owners or the survivor or survivors, upon presentation and surrender of this certificate properly endorsed. . . ."

These three CDs, issued in February 1971 and January 1972, were apparently reissues of previously matured CDs originally purchased by the decedent with his own funds. When the decedent first purchased the CDs, bank personnel pursuant to their general policy, explained that either party could cash the CDs or would own them after one party pre-deceased the other, which the decedent gruffly acknowledged he understood. When the CDs in question were reissued, the decedent and bank personnel had no conversation concerning the ownership of these CDs because it was customary to rewrite a CD the same way it was originally written.

The decedent, James B. Wood, was a rancher, a former Deputy United States Marshal, and a non-practicing attorney. Mr. Wood was well-known to the bank officers and personnel as a person with legal training. Robert Davies was a close family friend. The decedent and Davies had a checking account in their joint names, which was inventoried by Davies as an asset of the decedent's estate. Davies indicated he had an understanding with the decedent that the joint checking account was only for the decedent's convenience and conveyed no interest to Davies. Interest from the CDs was placed in this checking account but notice, "interest advice" as it was called, was sent only to the decedent. At the time of the decedent's death the CDs were in the bank vault because the decedent had said he would be fiddling with them from time to time. However, Robert Davies further testified that the

night the decedent and he discussed wills the decedent "told me that I was taken care of down at the bank." No specific disposition of these CDs is made in the decedent's will dated June 13, 1972.

The trial court excluded as irrelevant evidence from Russell Stoddard, president of the First National Bank of Liberal, concerning the bank's intention when it used the language quoted from the CDs. The appellee proffered evidence that it was the bank's intention, on advice from their counsel, to create a joint tenancy with right of survivorship by the use of the language employed on the CDs.

To create a joint tenancy K. S. A. 58-501 must be satisfied. It reads:

"Real or personal property granted or devised to two or more persons including a grant or devise to a husband and wife shall create in them a tenancy in common with respect to such property unless the language used in such grant or devise makes it clear that a joint tenancy was intended to be created. . . . Where joint tenancy is intended as above provided it may be created by:

"(a) Transfer to persons as joint tenants from an owner or a joint owner to himself and one or more persons as joint tenants;

\* \* \* \* \*

". . . The provisions of this act shall apply to all estates in joint tenancy in either real or personal property heretofore or hereafter created. . . ."

In establishing a joint tenancy the all-important factor is the clarity with which the intent of the grantor is expressed at the time the transaction is initiated. (*In re Estate of Matthews*, 208 Kan. 492, 506, 493 P. 2d 555; *Winsor v. Powell*, 209 Kan. 292, 299, 497 P. 2d 292; and *Pace v. First National Bank of Osawatomie, Kansas*, 404 F. 2d 52, 54 [10th Cir. 1968].) (See also, Annot., 43 A. L. R. 3d 971, 989, § 4 [1972].)

Here the language employed in the CDs does not clearly establish a joint tenancy by using the "magic" words "as joint tenants with right of survivorship and not as tenants in common." (*In re Estate of Smith*, 199 Kan. 89, 91, 93, 427 P. 2d 443; *Edwards v. Ledford*, 201 Kan. 518, 524, 441 P. 2d 834; *Agrelius v. Mohesky*, 208 Kan. 790, 792, 494 P. 2d 1095; *Johnson v. Capitol Federal Savings & Loan Assoc.*, 215 Kan. 286, 290, 524 P. 2d 1127; and *Eastman, Administrator v. Mendrick*, 218 Kan. 78, 542 P. 2d 347.) Standing alone, various phrases involving words of survivorship have consistently failed to clearly establish a joint tenancy under the case law. (*In re Estate of Swingle*, 178 Kan. 529, 530, 289 P. 2d

778; *Riggs v. Snell*, 186 Kan. 355, 359, 350 P. 2d 54, reh. denied, 186 Kan. 725, 352 P. 2d 1056; *Miller v. Higgins*, 188 Kan. 736, 737, 366 P. 2d 257; and *In re Estate of Johnson*, 202 Kan. 684, 695, 452 P. 2d 286, modified, 203 Kan. 262, 452 P. 2d 286.)

The language in this case appears to come from K. S. A. 9-1205, the Kansas banking statute, dealing with deposits and survivors. This statute reads:

"Deposits may be made in the names of two or more persons, including minors, payable to either or any of them, or payable to either or any of the survivors or the sole survivors, and such deposits or any part thereof or any interest thereon, may be paid to or on order of any of said persons whether the other or others be living or not; and the receipt, order, or acquittance of the person so paid shall be valid and sufficient release and discharge to the bank for any payment so made."

Previous cases emphasize this statute is for the bank's protection in paying on "joint" accounts. K. S. A. 9-1205 and its predecessors have nothing to do with the ownership of the funds as between two persons alleged to be joint tenants. (*Malone v. Sullivan*, 136 Kan. 193, 14 P. 2d 647; *Spark v. Brown*, 167 Kan. 159, 163, 205 P. 2d 938; *Miller v. Higgins*, supra at 739; *Edwards v. Ledford*, supra at 526; and *Bowen, Administrator v. Hathaway*, 202 Kan. 107, 113, 446 P. 2d 723.)

Contract principles are controlling in joint tenancy cases. (*In re Estate of Smith*, supra at 93; *In re Estate of Matthews*, supra at 506; *Winsor v. Powell*, supra at 299; and *Eastman, Administrator v. Mendrick*, supra [Syl. ¶ 3].) Where, as here, the "magic" words used to create a joint tenancy are missing, and the written language used in the contract is uncertain or ambiguous, extrinsic evidence is admissible to establish the intention of the parties. (*Edwards v. Ledford*, supra at 526; and *In re Estate of Johnson*, supra at 697.) (See also, Annot., 33 A. L. R. 2d 569 [1954] and Annot., 42 A. L. R. 2d 600 [1955].) Other jurisdictions concur and admit parol evidence when faced with ambiguous language concerning the ownership of certificates of deposit. (*In re Estate of Fulk*, 136 Ohio St. 233, 24 N. E. 2d 1020 [1940]; and *Hendricks v. Grant County Bank*, 379 P. 2d 693 [Okla. 1963].)

In admitting parol evidence the inquiry should be confined to the facts and circumstances existing prior to and contemporaneously with the execution of the contracts, since it is only the intention of the depositor at the time of the creation of the account that is material. (*Simonich, Executrix v. Wilt*, 197 Kan. 417, 424, 417 P. 2d 139; and *In re Estate of Matthews*, supra at 503.)

After a thorough review of the record we cannot say the trial court erred in finding joint tenancy ownership of the certificates of deposit was intended by the decedent.

Here the evidence shows when the CDs were first issued the decedent, an attorney, gruffly acknowledged the fact Mr. Davies could cash them. Other cases have placed reliance on this type of knowledge relayed by the bank to the depositor. (*Malone v. Sullivan*, supra at 194; *Simonich, Executrix v. Wilt*, supra at 418; *In re Estate of Smith*, supra at 91-92; and *Edwards v. Ledford*, supra at 519.) The evidence further shows the decedent told Mr. Davies he "was taken care of down at the bank" on an occasion when the decedent was discussing wills with Mr. Davies.

It was relevant to show by parol evidence that Mr. Wood was a lawyer, by education, and formerly a Deputy United States Marshal, although he practiced law only a short period of time. Mr. Wood was personally involved in the purchase of the CDs in question. Our decisions impliedly recognize that the qualifications of a party to a contract of this nature are relevant on the issue of intent. In *Agrelius v. Mohesky*, supra at 793, it was noted Mrs. Agrelius "was certainly no stranger to joint tenancy accounts." The court said in the case of *In re Estate of Matthews*, supra at p. 506, "that Mr. Matthews had knowledge as to the requisites necessary to establish a joint tenancy account." In *Miller v. Higgins*, supra at p. 742, it was noted in the dissenting opinion "that Fern Henery was an intelligent woman, had been an executive officer of the First National Bank of Havensville at one time, and was also a large stockholder in the bank—'perhaps a controlling interest.' "

The bank president's proffered testimony discloses the bank intended to create a joint tenancy. Where a bank official intends to create a joint tenancy account or joint tenancy ownership in certificates of deposit because that is what the depositor wanted or requested, his testimony is relevant and should be admitted. (*Edwards v. Ledford*, supra at 521; *In re Estate of Smith*, supra at 92; and *Miller v. Higgins*, supra at 741.) In view of our conclusion that the trial court had sufficient evidence to find a joint tenancy was established in the ownership of the three certificates of deposit, the exclusion of the bank president's proffered testimony is of no importance.

That the three CDs were purchased by Mr. Wood using only his own funds is of no particular significance so far as the joint tenancy

feature is concerned. (See, K. S. A. 58-501 and *Johnson v. Capitol Federal Savings & Loan Assoc.,* supra at 290-291.) In *Winsor v. Powell,* supra, it is said:

". . . [W]here the intent to create a joint tenancy is clearly manifested a joint tenancy may be created by a transfer to persons as joint tenants from an owner or a joint owner to himself and one or more persons as joint tenants (see K. S. A. 58-501 [a]). . . ." (p. 299.)

Furthermore the use or non-use of the funds by Robert Davies is not controlling, since it is the grantor's intent at the time the transaction is initiated which controls. (*In re Estate of Matthews,* supra.)

Lack of knowledge as to the existence of the CDs by the surviving joint tenant is irrelevant. Our cases reveal factual situations where the surviving joint tenant had little or no knowledge of the creation of the joint tenancy estate, thereby giving rise to a donee beneficiary situation resulting from the contract between the depositor and the bank. (*Spark v. Brown,* supra; *Asche v. Matthews,* 136 Kan. 740, 18 P. 2d 177; *Miller v. Higgins,* supra; *In re Estate of Smith,* supra; *In re Estate of Matthews,* supra; and *Agrelius v. Mohesky,* supra.) Acceptance by the donee beneficiary is presumed. (*In re Estate of Smith,* supra at 93.)

Of interest is the action of Robert Davies who as executor inventoried and accounted for the funds in the joint checking account in the decedent and his joint names as an estate asset, but who did not inventory and account for the CDs as an estate asset. Other cases have placed reliance on the actions of an executor-joint tenant survivor in analogous situations. (See, *In re Estate of Cronholm,* 38 Ill. App. 2d 141, 186 N. E. 2d 534 [1962]; and *In re Chase's Estate,* 82 Idaho 1, 12, 348 P. 2d 473 [1960].) Here Robert Davies cannot be said to have asserted inconsistent positions, and we deem that relevant as showing the true intent of the parties. Robert Davies admitted the joint checking account to have been created for convenience only, and he accordingly accounted for these funds in the estate as a trustee. At no time did he concede the CDs were part of the estate. He claimed the CDs as the surviving joint tenant and at no time did he account for them in the estate.

In conclusion we hold the record discloses sufficient competent evidence to warrant the trial court's finding that the intent of the grantor was established with sufficient clarity to create a joint tenancy in the three certificates of deposit here in question.

The judgment of the lower court is affirmed.

MILLER, J., dissenting: I cannot agree with the court's conclusion in this case. I agree that the equivocal wording utilized in the drafting of these CDs does not establish a joint tenancy.

The intention of the bank, it seems to me, is irrelevant, since "it is only the intention of the *depositor* at the time of the creation of the account that is material." (Emphasis supplied.) There is no evidence that the decedent *wanted* or *requested* joint tenancy ownership, and thus I think the trial court was correct in excluding the testimony of the bank president. I cannot conceive of counsel advising this financial institution to use the language here employed in order to create a joint tenancy. But again, the bank's intention, and the advice given the bank by its counsel, are not germane to the issue here.

The sole question is whether the parol evidence establishes an intent on the part of the decedent to create a joint tenancy. We have only two statements by him bearing upon that question. First, when the CDs were issued, an assistant cashier at the bank asked Mr. Wood if he knew that Mr. Davies could cash them, and he said "yes." Second, Mr. Wood later told Mr. Davies that Davies "was taken care of down at the bank." Since Davies was empowered to write checks on Wood's checking account, and he was designated as Wood's executor, this statement could be taken in several ways. To say the least, it is not free of ambiguity.

I am unable to agree that the extrinsic evidence discloses a clear intention on the decedent's part to create a joint tenancy. Therefore, I respectfully dissent.