No. 47,259

MARVIN E. JOHNSON, *Appellant,* v. CAPITOL FEDERAL SAVINGS & LOAN ASSOCIATION; THE EXCHANGE BANK OF SCHMIDT & KOESTER; and SYLVESTER SCHMIDT; EDNA HICKS, as Executrix of the Will of Viola Mae Johnson, Deceased, Intervener; and WILLIAM L. JOSEPH, *Appellees.*

(524 P. 2d 1127)

Opinion filed July 17, 1974.

*C. Bruce Works,* of Topeka, argued the cause and was on the brief for the appellant.

*Kenneth V. Moses,* of Moses & Reeves, of Marysville, argued the cause, and *Tom M. Reeves,* of the same firm, was with him on the brief for the appellees.

The opinion of the court was delivered by

FONTRON, J.: The plaintiff, Marvin E. Johnson (Marvin), has appealed from a judgment in which the trial court held that the executrix of the last will and testament of Viola Mae Johnson (Mrs. Johnson) was entitled to the proceeds of a $15,000 joint savings account in the Capitol Federal Savings & Loan Association (Capital Federal). The account was evidenced by certificate of deposit which the Exchange Bank of Schmidt & Koester (the bank) had in its possession.

Mrs. Johnson acquired the certificate March 31, 1970, with her own funds, having it issued in the names of herself, her son Marvin and her brother William H. Joseph (Joseph) as joint tenants with rights of survivorship. On August 20, 1971, Mrs. Johnson borrowed $1877 from the bank and placed the certificate of deposit with the bank as security. Mrs. Johnson died October 27, 1971, and her sister-in-law, Edna Hicks (Edna) was appointed executrix of her last will and testament.

Marvin came prominently into the picture on or about December 20, 1971, when he paid off his mother's note to the bank and demanded delivery of the certificate. The bank refused Marvin's demand and its refusal triggered the present lawsuit by Marvin against the bank and Capitol Federal. In his petition Marvin alleged that the bank's refusal was willful, wanton and malicious and he prayed for delivery of the certificate of deposit or its

equivalent of $15,000 and for $7500 punitive damages. He also prayed that Capitol Federal be restrained from disposing of the savings account, being No. 985058.

On January 14, 1972, both the bank and Sylvester Schmidt, who was also a named defendant, filed identical answers admitting payment of the note but alleging that a controversy existed involving the ownership and right to possession of the certificate, and requesting that Joseph and Edna be made parties defendant. They also asked for a declaratory judgment ordering Capitol Federal to deliver the certificate to Edna Hicks as executrix of Mrs. Johnson's will to be included in the inventory of her estate for tax and other purposes. On the same date Edna Hicks filed a petition for intervention alleging her appointment as executrix, that Mrs. Johnson owned the certificate at the time of her death, and that Joseph had consented that it be delivered to her.

Edna later filed an intervening petition setting forth Mrs. Johnson's will, together with the will of her predeceased husband, and alleging that Mrs. Johnson had contributed all the funds in the account, intending that at her death one-third of the account be paid Marvin and two-thirds be paid Joseph to be held in trust by the latter for Marvin's children, Debra Joy Johnson (Debra) and Dennis Owen Johnson (Dennis), until they reached the age of twenty-one. Edna prayed that the certificate be delivered to her and that the proceeds be distributed in accordance with Mrs. Johnson's will.

Joseph filed two answers, one to Marvin's petition and one to Edna's intervening petition, the gist of his answers being that it was Mrs. Johnson's intention and agreement with him that he should hold his title in joint tenancy in trust for the purpose of dividing the proceeds from the certificate of deposit after her death, one-third to Marvin and one-third each to Debra and Dennis. Joseph prayed that the proceeds be paid to Edna as a part of Mrs. Johnson's estate to be used for payment of debts, taxes and expenses and to be distributed in accordance with the provisions of her will, which is to say that after payment of certain bequests the remainder of the estate was to be divided equally between Marvin, Debra and Dennis. In the alternative Joseph asked that the proceeds be divided one-third to Marvin, one-third to Debra and one-third to Dennis.

After Joseph had been deposed, Marvin filed a motion for summary judgment. This was heard October 13, 1972, with all parties

being represented by counsel at the hearing. On October 26, the court entered summary judgment ordering the bank to surrender the certificate of deposit to Capitol Federal and that on receipt of the certificate Capitol Federal should pay all the proceeds of principal and interest to Edna Hicks as executrix of the last will and testament of Mrs. Johnson. As part of this summary judgment the court found that Mrs. Johnson informed Joseph that "they wanted this estate all converted into cash and that divided three ways, one third to Marvin and one third to the children, and that the kids' share be put in Capitol Federal Savings or Certificates so they could not have access to it until they were twenty one and they wanted to make sure that was done"; that under the wills of Mrs. Johnson and her predeceased husband the remainder of the estate they had accumulated was to be divided, one-third to Marvin, one-third to Debra and one-third to Dennis; that Mrs. Johnson created Joseph as express trustee to hold the proceeds of the certificate for the benefit of Debra and Dennis; that Joseph had no personal interest in the proceeds; and that the certificate was a part of the assets of Mrs. Johnson's estate and the proceeds thereof were to be included in the inventory of the estate.

Marvin thereafter moved for an order to set aside the findings of facts and conclusions of law. At the time this motion was argued the trial court commented rather extensively in explanation of the judgment and the underlying reasons therefor. We quote in part:

". . . [B]asically the two issues that the Court indicated that were needing to be resolved were one: The question of whether there was a joint tenancy created on this C. D. with the right of survivorship . . . And the Court found that there was a joint tenancy account set up by the testator, Mrs. Johnson, with her son Marvin E. Johnson, and William H. Joseph, her brother, the deposed witness, all as joint tenants.

"And that passed the matter to the second question the Court had to resolve once the Court found the joint tenancy, does that preclude the Court from making any further inquiry as to the intent of the testator on the joint tenants involved. And the Court found that on the basis of *Winsor v. Powell*, 209 Kan. 292, that a joint tenancy ownership is not incompatible with legal concepts which govern trusts.

.  .  .  .  .  .  .  .  .  .  .  .  .

"The Court finds that the name of Mr. Joseph appeared as a joint tenant with no more interest than the fact than [sic] he was a trustee for the benefit of the two minor children of the Plaintiff, Mr. Johnson; they being the grandchildren of the testator. And the Court found then, as a matter of law, that there was a joint tenancy but that the one joint tenant, Mr. Joseph, was no more than a trustee for the benefit of the children. And the Court held that an express trust was created for the benefit of the said minor children with

Mr. Joseph as the trustee and for the benefit of the children. And on the basis that the Court found that the C. D. constitute a part of the assets of the estate of Mrs. Johnson, who is deceased, and will Order that Capitol Federal or the possessor of the C. D. disburse the C. D. to the executrix to be included in the Inventory, and judgment was entered accordingly."

Although the plaintiff has listed five points on appeal, his contentions chiefly are these: (1) the trial court erred (a) in directing that the proceeds of the account be paid into Mrs. Johnson's estate, (b) in admitting parol evidence on the subject of intent and (c) in decreeing a trust; and (2) that he, himself, is entitled to the entire account.

Both savings accounts and checking accounts titled in joint tenancy seem to have achieved considerable popularity in recent years among financial institutions, and certain legal aspects of the joint tenancy relationship have been before this court for consideration on a number of occasions. Considerable thought has gone into the delineation of various characteristics of joint tenancy accounts, including the manner of their creation. We feel no urge to repeat at this time all we have said on the subject, but suggest that those who have a particular interest in the subject may refer to our opinions in *Simonich, Executrix v. Wilt*, 197 Kan. 417, 417 P. 2d 139; *In re Estate of Smith*, 199 Kan. 89, 427 P. 2d 443; *In re Estate of Johnson*, 202 Kan. 684, 452 P. 2d 286; *Edwards v. Ledford*, 201 Kan. 518, 441 P. 2d 834; *Agrelius v. Mohesky*, 208 Kan. 790, 494 P. 2d 1095; *Winsor v. Powell*, 209 Kan. 292, 497 P. 2d 292.

The trial court found that the savings account with Capitol Federal was one in joint tenancy, and well it might, for the so-called "magic words" were used. In *Edwards v. Ledford*, supra, Mr. Justice O'Connor, speaking for the court said:

"As a result of our two most recent decisions, *Simonich, Executrix v. Wilt*, supra, and *In re Estate of Smith*, supra, there is no question that according to contract principles, a joint tenancy account with right of survivorship is created when the parties use an account signature card, signed by the depositor, containing the 'magic words' commonly regarded by our decisions as establishing a joint tenancy—as joint tenants with right of survivorship and not as tenants in common. The use of this language makes it clear that joint tenancy is intended and meets the requirements of 58-501 to the letter. In such case, the provisions of the signature card constitute a contract in writing, enforceable according to its terms, and a parol understanding at variance with such terms is inadmissible in the absence of fraud or mutual mistake. . . ." (pp. 524, 525.)

That the account was established by Mrs. Johnson using only her

own funds is of no significance, so far as the joint tenancy feature of the account is concerned. In *Winsor v. Powell,* supra, we said:

". . . [W]here the intent to create a joint tenancy is clearly manifested a joint tenancy may be created by a transfer to persons as joint tenants from an owner or a joint owner to himself and one or more persons as joint tenants (see K. S. A. 58-501 [a]). . . ." (p. 299.)

First and foremost it is Marvin's contention that the trial court erred in ordering the proceeds of the account paid into the estate of Mrs. Johnson. We believe he has a valid point on this score. The law seems clear that on the death of a joint tenant the property descends to the survivor or survivors. The rule is expressed in 48 C. J. S., Joint Tenancy, § 1b, pp. 910, 911, in these words:

"Survivorship is the distinctive characteristic of an estate in joint tenancy. On the death of a joint tenant, the property descends to the survivor or survivors, and at length to the last survivor. . . . The right of survivorship terminates only where the entire estate, without the original tenants having disposed of their title, comes into the hands of the last survivor. . . ."

See, also, to the same effect, 20 Am. Jur. 2d Cotenancy and Joint Ownership, § 3, pp. 94, 95; 64 A. L. R. 2d, Anno: Joint Tenancy—Termination, p. 922; 4 Thompson on Real Property, 1961 Replacement, § 1779; 4A Powell on Real Property, § 618.

This court has spoken authoritively on this subject in *In re Estate of Carlson,* 201 Kan. 635, 643, 443 P. 2d 339, where Mr. Justice Fatzer said:

"A joint tenancy exists where a single estate in property, real or personal, is owned by two or more persons, under one instrument or act of the parties. The grand incident of joint tenancy is survivorship, by which the entire tenancy on the decrease [sic] of any joint tenant remains to the survivors, and at length to the last survivor. (*Bouska v. Bouska,* 159 Kan. 276, 279, 153 P. 2d 923.). . . ."

See, also, *Best v. Tatum,* 78 Kan. 215, 96 Pac. 140; *Noble v. Teeple,* 58 Kan. 398, 49 Pac. 598; *Simmons v. McLain,* 51 Kan. 153, 32 Pac. 919; *In re Estate of Biege,* 183 Kan. 352, 357 P. 2d 872; *Carson, Executrix, v. Ellis,* 186 Kan. 112, 348 P. 2d 807; *Baade v. Ratner,* 187 Kan. 741, 359 P. 2d 877; 1 Bartlett's Kansas Probate Law and Practice (Rev. Ed.), § 457, p. 550.

Under the rule as it has been stated, the joint savings account with Capitol Federal did not become part of the assets of Mrs. Johnson's estate upon her death nor was her executrix entitled thereto, but the title to the account passed equally to the surviving joint tenants, Marvin E. Johnson and William L. Joseph.

We pass to plaintiff's second point: that parol evidence was not

admissible to vary the terms of the written instrument creating the joint tenancy account. Such has been our holding. The case of *Simonich, Executrix v. Wilt,* supra, involved a joint tenancy savings account with rights of survivorship which was established by the decedent during his lifetime. We held that parol evidence was inadmissible under the parol evidence rule to vary its terms. Speaking for the court, Mr. Justice Schroeder said:

> "It has been held in the absence of pleading and proof of some species of fraud or mutual mistake in the procuring of a party's signature to a plain and unambiguous written contract, it must be enforced according to its terms, and neither pleading nor proof of a parol understanding at variance with such terms can be considered. (*Colt Co. v. Kocher,* 123 Kan. 286, 255 Pac. 48; and *Hazelton v. Chaffin,* 109 Kan. 175, 197 Pac. 870.)" (p. 424.)

The rule was followed in *In re Estate of Smith,* supra, where we quoted verbatim the foregoing passage from *Simonich* and further said:

> "Here, there is nothing to indicate from the record that Floyd objected to the introduction of any of the parol or extrinsic evidence. The parol evidence rule is one of substantive law and not merely a rule of evidence, and therefore, it must be adhered to, irrespective of whether or not proper objection is interposed at trial. (*Thompson Co. v. Foster,* 101 Kan. 14, 165 Pac. 841. Also, see *Brenn v. Insurance Co.,* 103 Kan. 517, 175 Pac. 383.)" (p. 95.)

In *Winsor v. Powell,* supra, the defendant insisted that parol evidence was not admissible to vary the terms of several joint tenancy instruments established by the deceased grantor, citing the *Simonich* and *Smith* cases. As to this contention it was said:

> ". . . However, we have been careful to point out that the parol evidence rule is applicable where joint tenancies are created, *in the absence of fraud or mutual mistake.* No breach of a confidential relationship made its appearance in either the *Smith* or *Simonich* cases, and herein lies a substantial distinction . . ." (pp. 302, 303.)

In the present case neither fraud nor mutual mistake was pleaded. Moreover, we find no evidence of either in this record. Although it appears from Mr. Joseph's deposition testimony that his sister relied on him for advice, he was not present when she opened account No. 985058. Not only that, but throughout his entire deposition Joseph disclaimed any personal interest in the account and frequently asserted his interest in the account as joint tenant was only for the benefit of the two grandchildren, Debra and Dennis. There was no attempt on Joseph's part to take advantage of a confidential relationship or to repudiate any agreement with his sister.

So far as Marvin is concerned, there is no evidence indicating that he had ever advised his mother in financial matters, or that he was present when the account was opened or had played any part in its creation.

Neither do we perceive the presence of mutual mistake, although Joseph testified that both he and Mrs. Johnson were under the impression that the certificate would be a part of her estate. However, there is evidence which indicates that someone at Capitol Federal had advised Mrs. Johnson otherwise. Be that as it may, there is no evidence of any mistake which was common both to Mrs. Johnson and Capitol Federal. In *Agrelius v. Mohesky,* supra, we said that the mutual mistake to which reference had been made in the *Simonich* and *Smith* opinions was "mistake on the part of the depositor or grantor on the one hand, and the bank or depositee on the other." (p. 793.)

Did the trial court err in imposing a trust as to the share of or interest in the joint property possessed by Joseph as one of the two surviving joint tenants? We believe not. Mr. Joseph disaffirmed any personal interest in the certificate; he wanted none of it for himself, he said; and his only interest was to see that Debra and Dennis received their share. We believe that by his own affirmations he has constituted himself as trustee for the two children of whatever proceeds from the joint account might come into his hands.

The situation is quite like that in *Winsor v. Powell,* supra, where the daughter of the decedent grantor, who had established the joint account with his own funds, stated on various occasions after her father's death that she was holding the proceeds for her brothers and sisters. In our opinion in that case we cited from Restatement of the Law, Second, Trusts, § 24, Mode of Manifestation of Intention, p. 67:

" '(1) Except as otherwise provided by statute, the manifestation of intention to create a trust may be made by written or spoken words or by conduct.

" '. . . Acts prior to and subsequent to, as well as acts contemporaneous with the manifestation which it is claimed creates a trust, may be revelant in determining the settlor's intention to create a trust.'

"The following illustration is set out on page 68:

" '1. A, the owner of certain bonds, declares that he holds the bonds "for the use of B" or "for the benefit of B." In the absence of evidence of a contrary intention, A holds the bonds in trust for B.' " (p. 302.)

We quoted also the following language from *Voelkel et al. v. Tohulka et al.*, 236 Ind. 588, 141 N. E. 2d 344:

" '. . . An orally expressed trust may be created in personal property held and owned by a person, at any time by the mere declaration that it is so held. No formal words are necessary if the intentions as well as the terms are plain. . . . (pp. 601, 602)" (p. 302.)

It is our opinion the trial court correctly found William L. Joseph to be a trustee and holding his share in the certificate of deposit or its proceeds for the benefit of the two Johnson children, Debra Joy and Dennis Owen.

The plaintiff has asserted that he is entitled to the entire proceeds from the joint tenancy account because Mr. Joseph had disclaimed any interest therein. This statement is not entirely accurate. Joseph has disclaimed only the *beneficial* interest in the account. No authority has been cited to support Marvin's claim to the entire account and we know of none. We consider his contention in this regard as being without merit.

The judgment of the court below is reversed and this cause remanded with directions that judgment be entered adjudging Marvin E. Johnson and William H. Joseph, as trustees for Debra Joy Johnson and Dennis Owen Johnson, to be joint tenants of savings account No. 985058 with the Capitol Federal Savings and Loan Association and entitled as joint tenants to possession of the certificate of deposit, and directing the Capital Federal Savings and Loan Association to pay the proceeds of said account to Marvin E. Johnson and William H. Joseph, as joint tenants, upon their surrendering the certificate of deposit.

It is so ordered.