No. 49,308

In the Matter of the Estate of Robert P. Girndt, Deceased.

(590 P.2d 1038)

Opinion filed February 24, 1979.

*William R. Brady,* of Topeka, argued the cause and was on the brief for the appellants, Gail Hale and Mary L. Brady.

*Arnold C. Nye,* of Nye & Nye, of Newton, argued the cause and was on the brief for the appellee, John C. Suderman, Executor of the Estate of Robert P. Girndt, deceased.

The opinion of the court was delivered by

FROMME, J.: This is an appeal from a judgment which determined title and ownership of various bonds and securities in a

decedent's estate claimed by the widow as the surviving joint tenant. The daughters of the decedent, who are beneficiaries under decedent's will, have appealed.

The decedent, Robert P. Girndt, died testate. A widow and three daughters by a prior marriage survived. Robert P. Girndt and his widow, Pauline W. Girndt, had rented a safety deposit box in a bank. At the time of Mr. Girndt's death the box was registered in both names and each had an independent right of access. The bonds and securities which are the subject of this appeal were in the box at the time of Mr. Girndt's death. The executor, John Suderman, and Mrs. Girndt were present when the box was opened and the contents inventoried.

The box contained many certificates of common stock, which certificates were registered in the names of Robert P. Girndt and Pauline W. Girndt, as joint tenants with right of survivorship. No question is raised here concerning ownership of most of these certificates. They passed to Mrs. Girndt as the surviving joint tenant and no further mention will be made of them.

In addition to the above there were various municipal improvement "bearer bonds," three separate certificates covering limited partnership interests and one certificate of common stock in Duckwall Stores. We will first consider the ownership and title to the "bearer bonds."

The trial court considered extrinsic evidence in determining the ownership and title to the "bearer bonds" found in the safety deposit box. The appellants contend these "bearer bonds" were purchased by decedent, were placed in his box for safe keeping, were owned by him individually and thus became a part of his estate. The trial court held otherwise except for the Jackson County Sports Complex Authority bonds and one-half interest in the Colby, Kansas Community Junior College District bonds.

Before examining the evidence considered by the trial court, it is well to review some of the principles to be considered in determining ownership of property claimed to be held in joint tenancy. The books are full of cases on the subject. Ownership of and title to intangible personal property, as well as other personal and real property, may be held in joint tenancy. *In re Estate of Biege,* 183 Kan. 352, 327 P.2d 872 (1958). Joint tenancy ownership of securities may be created by having the certificate issued so as to name two or more persons the owners as joint tenants

with right of survivorship. *Winsor v. Powell,* 209 Kan. 292, 299, 497 P.2d 292 (1972). The joint tenancy relationship is governed by principles of contract law and the intent to create such a relationship must be clearly manifested. K.S.A. 58-501. When a written title instrument, by which joint tenancy ownership has been created, is clear and unambiguous it may be enforced according to its terms, and neither pleading nor proof of a parol understanding at variance with the terms of the title instrument can be considered. *Simonich, Executrix v. Wilt,* 197 Kan. 417, 417 P.2d 139 (1966); *In re Estate of Smith,* 199 Kan. 89, 427 P.2d 443 (1967). It is only when some species of fraud, mutual mistake or fiduciary obligation is pleaded and proven that a title instrument which is clear and unambiguous on its face may be varied or set aside on the basis of extrinsic evidence. Without allegations of fraud, mutual mistake or a holding in trust parol evidence is not admissible to set aside, explain or vary the terms of the written title instrument. *Johnson v. Capitol Federal Savings & Loan Assoc.,* 215 Kan. 286, 524 P.2d 1127 (1974). If, however, the nature of the title and ownership expressed in the title document is uncertain or ambiguous, extrinsic evidence may be introduced to establish the intent of the parties when the title was created. *In re Estate of Matthews,* 208 Kan. 492, 493 P.2d 555 (1972). If the "magic words" used in creating a joint tenancy, as denominated in *In re Estate of Wood,* 218 Kan. 630, Syl. ¶ 3, 545 P.2d 307 (1976), do not appear on the title document the statute, K.S.A. 58-501, creates a presumption that a joint tenancy was not intended. The burden of proof in such case is placed on those claiming as surviving joint tenants. *Purma v. Stark,* 224 Kan. 642, 645, 585 P.2d 991 (1978).

In the present case the "bearer bonds" fall into that group mentioned where the ownership expressed in the title document is uncertain, and extrinsic evidence may be introduced to determine ownership in such case. The trial court considered the testimony of both the widow and Fred Sanderson in resolving the question of ownership. Sanderson was the decedent's investment broker who handled many of the acquisitions of stock and bonds for the decedent and Mrs. Girndt. For the most part these securities were purchased with funds coming from a checking account held in the names of Robert P. and Pauline W. Girndt as joint tenants with right of survivorship. The instructions by Mr. Girndt

to his broker, Sanderson, were to have the securities issued to him and his wife as joint tenants. When the "bearer bonds" were delivered to Mr. Girndt the invoices stapled to the bonds, with only two exceptions, stated the securities were "to be registered in the name of Robert P. Girndt and Pauline W. Girndt . . . joint tenancy W.R.O.S." The two exceptions referred to above were the invoices covering the Missouri Sports Complex bonds and the Colby, Kansas Community Junior College District bonds. All bonds when received had been placed in the safety deposit box with joint access. The letters, W.R.O.S., were used on the invoices as an abbreviation of "with right of survivorship." The bearer bonds consisted of the following as taken from the court's findings:

"5. . . . [T]hat included in the contents of such safety deposit box were the following Municipal Bearer Bonds:

"(a) Bearer Bonds issued by Jackson County, Missouri Sports Complex Authority I.D. 8%, 4 bonds each in the principal amount of $5,000.00 with an appraised value of $19,400.00 as more fully inventoried in IV (1).

"(b) 5 Bearer Bonds issued by Colby, Kansas Community Junior College District, each in the principal amount of $1,000.00 as more fully inventoried in IV (2).

"(c) City of Philadelphia, 5 bonds at $1,000.00 each with total appraised value of $3,270.00 as more fully set forth in VI (12-a) of the Inventory on file.

"(d) City of Lyons, 6 bonds of $5,000.00 each with total appraised value of $29,628.00 as more fully set forth in VI (12-b) of the Inventory on file.

"(e) City of Lyons, 3 bonds each in face amount of $5,000.00 with total appraised value of $14,709.00 as more fully set forth in VI (12-c) of the Inventory on file.

"(f) City of Gardner, 2 bonds of $5,000.00 each with total appraised value of $9,466.00 as more fully set forth in VI (12-d) of the Inventory on file.

"(g) City of Halstead, 7 bonds of $5,000.00 each with total appraised value of $28,493.50 as more fully set forth in VI (12-e) of the Inventory on file.

"(h) City of Wichita, 4 bonds of $5,000.00 each with total appraised value of $15,790.00 as more fully set forth in VI (13) of the Inventory on file."

The district court found and concluded:

"7. That in relation to Bearer Bonds described in Paragraph 5 (a) above, at the time of the Inventory by John C. Suderman as above set forth, an invoice was attached to such Bearer Bonds indicating ownership in Robert P. Girndt, individually; that such Bearer Bonds were purchased by said decedent from First Securities in Wichita and were sold by said Investment Company to the decedent, individually.

"8. That in relation to Bearer Bonds described in Paragraph 5 (b) above, at the time of the Inventory by John C. Suderman as above set forth, an invoice was attached to such Bearer Bonds indicating ownership in Robert P. Girndt and

Pauline W. Girndt, as tenants in common; that at the time of the purchase of such Bearer Bonds the decedent and his wife both intended that they each have an undivided one-half ownership therein.

"9. That at the time the Inventory was made by John C. Suderman as above set forth, invoices were attached to each set of Bearer Bonds referred to in Paragraph 5 (c), (d), (e), (f), and (g) above set forth, and each said invoices indicated that such Bearer Bonds were sold to Robert P. Girndt and Pauline W. Girndt as joint tenants with right of survivorship and not as tenants in common; that said invoices were stapled on to the Bearer Bonds referred to in such invoices; that all of said Bearer Bonds were purchased from a checking account owned by Robert P. Girndt and Pauline Girndt as joint tenants with right of survivorship and not as tenants in common; that all of said Bonds were purchased from investment broker, Fred Sanderson.

. . . .

"11. That at the time of the inventory of the safety deposit box by the said John C. Suderman as above referred to, no invoice was attached to Bearer Bonds referred to in Paragraph 5 (h) hereof; that said investment broker Fred Sanderson knew that said Bearer Bonds were for sale through a decedent's estate and arranged for the purchase of such Municipal Bonds by the decedent, Robert P. Girndt; that said municipal bonds were purchased through said investment broker under the same account and were purchased by the decedent under the name of the decedent and Pauline W. Girndt as joint tenants with right of survivorship and not as tenants in common; that payment of said Bonds was made from funds in a checking account owned by said decedent and Pauline W. Girndt as joint tenants with right of survivorship and not as tenants in common."

Bonds payable to bearer are title documents of such a nature that the identity of the true owners as well as the nature and extent of the ownership depends upon extrinsic matters. Therefore, evidence of the true ownership of bearer bonds, including intent of the party or parties when they purchased the same, may be introduced to clarify and determine ownership and title. *Cf. Johnson v. Capitol Federal Savings & Loan Assoc.,* 215 Kan. 286. The trial court properly considered extrinsic evidence in determining ownership of said bonds. After reviewing the evidence we affirm its findings. They support the court's conclusions on the ownership of the bearer bonds. Upon appellate review this court accepts as true the evidence, and all inferences to be drawn therefrom, which support or tend to support the findings in the trial court, and disregards any conflicting evidence or other inferences which might be drawn therefrom. Where findings are attacked for insufficiency of evidence, or as being contrary to the evidence, this court's power begins and ends with determining whether there is evidence to support such findings. Where the findings are so supported, they will not be disturbed on appeal. It

is of no consequence there may have been contrary evidence adduced which, if believed, would have supported different findings. *Highland Lumber Co., Inc. v. Knudson,* 219 Kan. 366, 548 P.2d 719 (1976).

We turn next to the certificates of interests or shares. The trial court found and the record discloses that two certificates of limited partnership interests, one for 10 units in McNeil Pacific Investors Fund 1972, and the other for 10 units in Real Properties, LTD.—1972, were issued in the names of Robert P. Girndt and Pauline W. Girndt, as joint tenants. Title to these two certificates passed to the surviving joint tenant, Pauline W. Girndt. The same is true of the certificate for 50 shares of common stock in Duckwall Stores. The trial court's findings and judgment on the ownership and title to these certificates was correct and is hereby affirmed.

We turn next to the certificate of Limited Partnership, Number B73-0192, in Lexton-Ancira for 20 units, Real Estate Income Partners, LTD., 1973-B which on its face states:

"*This Certifies That* ROBERT P. GIRNDT *is the owner of* TWENTY *fully-paid and non-assessable Units* . . . ."

Neither in the petition to declare ownership nor in the written defenses of the heirs did the parties plead any species of fraud, mutual mistake or fiduciary obligation which would justify admitting extrinsic evidence to explain or vary the terms of this written title instrument. The trial court erroneously admitted and considered extrinsic evidence in the form of oral testimony by Fred Sanderson, the broker. He testified these shares were purchased through him with instructions to have the certificate issued to Mr. and Mrs. Girndt as joint tenants, that through human error the certificate was issued in the name of Robert P. Girndt only, and that it was never sent back to the company for reissue. Such extrinsic evidence was not admissible to change or vary the express terms of the title document.

Certificates of shares in corporations or limited partnerships issued in the name of a single registered owner are clear and unambiguous indicia of ownership and title. In the absence of pleading and proof of some species of fraud, mutual mistake or fiduciary obligation incurred in procuring title, extrinsic evidence may not be introduced to set aside or vary the terms of the title instruments. *In re Estate of Smith,* 199 Kan. 89, Syl. ¶ 2; *Johnson*

*v. Capitol Federal Savings & Loan Assoc.,* 215 Kan. 286. Accordingly, the judgment of the trial court is reversed as to ownership of the certificate of Limited Partnership, Number B73-0192 in Lexton-Ancira for 20 units, Real Estate Income Partners LTD., 1973-B. The certificate was owned by Robert P. Girndt at the time of his death and title to said certificate remains in the decedent's estate and should be assigned according to the terms of decedent's will. The judgment of the trial court is affirmed in all other particulars and the case is remanded for further proceedings in accordance with this opinion.

The judgment of the trial court is affirmed in part, reversed in part and remanded.