(673 P.2d 462)

No. 55,541

EMMA NEADERHISER, *Appellee,* v. STATE DEPARTMENT OF SOCIAL AND REHABILITATION SERVICES, *Appellant.*

Opinion filed December 22, 1983.

*Stephen J. Craeton,* of State Department of Social and Rehabilitation Services, of Topeka, for the appellant.

*Evan Corman* of Corman & Barefield Law Office, of Minneapolis, for the appellee.

Before SPENCER, P.J., JEROME HARMAN, C.J. Retired, assigned, and STEVEN P. FLOOD, District Judge, assigned.

HARMAN, C.J. Retired: The State Department of Social and Rehabilitation Services (SRS) appeals a district court order reversing its denial of medical assistance to plaintiff Emma Neaderhiser. At issue is the nature of the real property plaintiff transferred to her son immediately before making application for assistance—was it joint tenancy property or was it some form of life estate?

In May, 1982, Mrs. Neaderhiser, an 89-year-old nursing home resident, consulted the SRS office at Minneapolis about receiving medical assistance. Later, SRS denied the application on the ground that the plaintiff had on June 5, 1982, transferred property to her son for less than its fair market value in order to

establish eligibility for assistance. See K.S.A. 1982 Supp. 39-709; K.A.R. 30-6-56.

Plaintiff appealed the denial to the district court, which ruled plaintiff had a life estate with a "possibility of reversion" in the realty transferred, and it reversed SRS's decision.

The property is a 200-acre farm in Ottawa County, Kansas, and a lot in Bennington, Kansas. Mrs. Neaderhiser became its owner in 1974 upon the death of her husband. On May 2, 1975, she deeded the property to herself and her son Verle Neaderhiser as "joint tenants with the right of survivorship and not as tenants in common . . . ." The same day she and her son signed the following agreement:

"IT IS UNDERSTOOD AND AGREED that the first party [Emma Neaderhiser] will transfer the above described property in joint tenancy with the right of survivorship and not as tenants in common, between the first and second parties and shall retain all of the income and the right of possession to said property for and during her lifetime, and after her death, the property shall belong to Verle Neaderhiser.

"IT IS FURTHER UNDERSTOOD AND AGREED that Verle Neaderhiser shall have the right to farm said property as long as he farms the same in a reasonable manner during the lifetime of Emma Neaderhiser.

"IT IS FURTHER UNDERSTOOD AND AGREED that all the income of said property shall be paid to Emma Neaderhiser for and during her lifetime."

According to SRS tables and regulations, $3,734.64 was the fair market value of the property plaintiff quitclaimed to her son in June, 1982, if a life estate was being conveyed; if the property had been held in joint tenancy, as SRS considered it, then the value of the interest transferred was $35,000, being one-half the value of the entire property, rendering Mrs. Neaderhiser ineligible for SRS assistance. Those values are not disputed.

In reviewing questions of law, a court may substitute its judgment for that of an administrative agency, although the court may give deference to the agency's interpretation of law. *Richardson v. St. Mary Hospital,* 6 Kan. App. 2d 238, 242, 627 P.2d 1143, *rev. denied* 229 Kan. 671 (1981).

Whether a property interest is a joint tenancy or a life estate, construction of an unambiguous written contract, and determining whether a written contract is ambiguous are all questions of law.

Considered by itself, the 1975 deed creates a joint tenancy. SRS argues the written agreement could have no effect because

of the presumption that prior agreements are merged in an executed and delivered deed. In *Webb v. Graham*, 212 Kan. 364, 366, 510 P.2d 1195 (1973), however, the court held:

"Although convenants in the contract are presumed to be merged in a deed executed and delivered in fulfillment of the contract, such a merger depends upon the intention of the parties, and intention in such cases is a question of fact to be determined by an examination of the instruments and from the facts and circumstances surrounding their execution."

This question of fact—if such it be, and neither party suggests that it is—does not limit the scope of review in the present case. SRS did not apply the merger doctrine but considered the written agreement together with the deed, as do we. SRS ruled the agreement merely set out the consideration for the creation of a joint tenancy. The trial court ruled the deed and agreement created a life estate with a "possibility of reversion."

K.S.A. 58-501 requires a clear expression of intent to create a joint tenancy. *In re Estate of Girndt*, 225 Kan. 352, 354, 590 P.2d 1038 (1979). The distinguishing characteristic of a joint tenancy is the right of survivorship. *In re Estate of Laue*, 225 Kan. 177, Syl. ¶ 3, 589 P.2d 558 (1979).

The terms used in the deed and agreement show clearly that Mrs. Neaderhiser intended to create some kind of property interest with a right of survivorship. See *Winsor v. Powell*, 209 Kan. 292, 299, 497 P.2d 292 (1972). She argues, however, that the interest created cannot be a joint tenancy. The traditional requirements of joint tenancy are unity of time, title, interest and possession. *Simonich, Executrix v. Wilt*, 197 Kan. 417, 421, 417 P.2d 139 (1966).

Plaintiff contends her exclusive right to possession and income for life precludes unity of possession and interest. SRS argues that Mrs. Neaderhiser's reservation of possession and income for life did not preclude a joint tenancy. Research reveals no Kansas cases on point, but cases from other jurisdictions support SRS's position. In *Tindall v. Yeats*, 392 Ill. 502, 64 N.E.2d 903 (1946), the deed appeared to create a joint tenancy, but an agreement signed the same day as the deed gave one tenant possession and income for life. The court held the agreement did not sever the joint tenancy. In *Miller v. Riegler*, 243 Ark. 251, 419 S.W.2d 599 (1967), an owner of stock had had certificates reissued in joint tenancy with her niece, but reserved the right to the dividends

for life. The court held that a joint tenancy existed. In *Jones v. Cox,* 629 S.W.2d 511 (Mo. App. 1981), a husband and wife deeded real estate to themselves and a friend "as joint tenants with rights of survivorship," but reserved the exclusive right to income and possession until they were unable to care for themselves. The court held that the deed created a joint tenancy.

Although these cases involved the creation of joint tenancies, the courts followed a general rule that a joint tenancy is not necessarily terminated by an agreement allocating income or possession among the tenants. See 20 Am. Jur. 2d, Cotenancy and Joint Ownership § 19; Annot., 64 A.L.R.2d 918, § 21.

The court in *In re Estate of Carlson,* 201 Kan. 635, 652, 443 P.2d 339 (1968), referred to this rule in dicta, but research reveals no Kansas cases directly on point. Generally, an agreement clearly inconsistent with joint tenancy will terminate an existing joint tenancy. See *Baade v. Ratner,* 187 Kan. 741, 744-45, 359 P.2d 877 (1961).

Had Mrs. Neaderhiser intended to create only a life estate for herself in the property in 1975, she could have accomplished that in a simple deed and there would have been no occasion for another agreement. The joint tenancy deed and agreement were executed contemporaneously. Mrs. Neaderhiser manifestly wanted something more than a life tenancy. Her intent to have a joint tenancy seems clear from the language used. Legally, the agreement as a whole is in no way inconsistent with joint tenancy so as to avoid or sever it, there being no clear intent to do so. The son merely waived his right to possession and income for a period of time. The four unities were not disturbed to the extent that joint tenancy did not exist.

Our conclusion is that by the two instruments Mrs. Neaderhiser created a joint tenancy in the property. Hence her 1982 quitclaim deed conveyed a one-half interest in the property to her son, rendering her ineligible for assistance.

Judgment reversed.