**Emil L. JESCHKE, Executor of the Estate of Emil J. Jeschke, Deceased, Ida G. Jeschke, and Myron Jeschke, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 84–1456.

United States Court of Appeals, Tenth Circuit.

March 12, 1987.

---

Robert A. Reeder (Alan M. Boeh, with him, on briefs), Reeder & Boeh, Chartered, Troy, Kan., for plaintiffs-appellants.

Robert A. Bernstein, Tax Div., Dept. of Justice (Benjamin L. Burgess, U.S. Atty., of counsel, Glenn L. Archer, Jr. Asst. Atty. Gen., Michael L. Paup, and John P. Giffin, Tax Div., Dept. of Justice, with him, on briefs), Washington, D.C., for defendant-appellee.

Before MOORE, McWILLIAMS and ANDERSON, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

The estate of Emil J. Jeschke appeals from an adverse judgment by the District Court in a federal estate tax refund suit filed by the estate. Upon audit of the federal estate tax return filed by the estate the Internal Revenue Service ("IRS") assessed a deficiency of $11,297.22 plus $2,766.14 in interest based mainly upon three adjustments: (1) inclusion in the gross estate of interest, unmatured and forfeitable prior to death but maturing on death, arising from certificates of deposit purchased and held by the decedent in joint tenancy; (2) a determination that the interest of decedent's widow in a bank account held in joint tenancy with the decedent and a surviving son was a terminable interest not qualifying for the marital deduction, due to the continuing joint tenancy of the son; and (3) a reduction of the marital deduction to account for the widow's "share" of funeral expenses, administra-tion expenses, and Kansas inheritance taxes. The IRS held the widow accountable for her share of the expenses, under Kansas law, despite the fact that other family members actually paid those expenses pursuant to an oral agreement made between themselves and decedent's widow after decedent's death.

The estate paid the additional taxes and interest and sued for a refund, challenging the legality of the adjustments just enumerated, and raising other, collateral issues. The case was tried to the District Court, without a jury, and judgment was entered in favor of the government, largely dismissing the complaint.[1] The same issues are raised by the estate on appeal. We affirm the judgment of the District Court.

I.

## INCLUSION OF INTEREST ON JOINTLY HELD CERTIFICATES OF DEPOSIT

The facts relating to this issue are uncontroverted and notably uncomplicated. During the period April 1971 to September 1976 the decedent purchased with his own funds 334 certificates of deposit from two local banks, the Troy State Bank and First Bank of Troy. The certificates ranged in value from $1,000 to $5,000 with a cumulative total face value at decedent's death of $460,000. R.Vol. II at 245–53.

Apparently as an estate planning device, each certificate was issued in decedent's name and the name of one of his seven children, eleven grandchildren, or four great-grandchildren, as joint tenants with rights of survivorship. Id. at 252–53, 255. One certificate designated decedent's widow as joint tenant. Id. Possession and control over the certificates remained with the decedent, who kept the certificates in his safe deposit box. Id. at 202; R.Vol. V at 27–28. Interest was payable at six

---

1. The memorandum and order of the District Court is unofficially reported at 84–1 U.S.T.C. para. 13,562 (Kan. Mar. 1, 1984). The estate was allowed a refund of $61.16 on a minor point.

month intervals and, at his direction, was all paid to the decedent. R.Vol. II at 201.

The full face amount ($460,000) of these 334 certificates of deposit held by the decedent in joint tenancy was reported on decedent's estate tax return as an asset of the estate. *Id.* at 245–53. The issue here concerns the interest accruing on the certificates from the date of the last payment to the date of decedent's death, amounting to $7,852.94. R.Vol. V at 4. The executor did not include that amount on the estate tax return. Upon audit the IRS determined the amount to be includible, and assessed additional tax and interest thereon.

Just prior to decedent's death the interest in question was unmatured, unmarketable, and forfeitable upon early redemption of the certificates. *See* Federal Reserve Banking Regulation, 12 C.F.R. § 217.4 (1977). However, by virtue of the same Federal Reserve Banking Regulation, the accruing interest automatically matured and was payable upon the event of decedent's death.[2]

The estate contends that the accruing interest on the 334 certificates of deposit is not includible in the gross estate for tax purposes. It emphasizes first that the interest was not an asset of the decedent just prior to death because it was forfeitable. It next emphasizes that although the interest automatically matured upon decedent's death, it belonged exclusively to the respective surviving joint tenants pursuant to the usual rules governing joint tenancies. *See Eastman v. Mendrick,* 218 Kan. 78, 542 P.2d 347 (1975); *Edwards v. Ledford,* 201 Kan. 518, 441 P.2d 834 (1968); *In re Estate of Smith,* 199 Kan. 89, 427 P.2d 443 (1968). In that connection, the estate points out that the ownership rights of the joint tenants sprang from and related back to the origination of the joint tenancy. Therefore, nothing was transferred from the decedent to the surviving joint tenants by

decedent's death; decedent's interest was merely extinguished.

Significantly, the estate concedes that none of those arguments standing alone supports its position. It acknowledges, as it must, that the principal of the certificates is includible in the estate, unaffected by the joint tenancies with their resulting automatic ownership in the survivors. Reply Brief for Appellants at 8–9. It also acknowledges that interest forfeitable prior to death but maturing at death is includible in the gross estate of a sole owner of a certificate. Brief for Appellants at 4–7. *See* Rev.Rul. 79–340, 79–2 C.B. 112; Treas. Reg. § 20.2033–1(b) (1986). Thus, the estate's position is a narrow one: joint tenancy interests and amounts forfeitable prior to death are includible for estate tax purposes when standing alone, but not when linked together. Not one authority is cited to us by the estate in direct support of such a proposition.

■ Section 2040 of the Internal Revenue Code of 1954 ("Code"), dealing with jointly held property, provides:

The value of the gross estate shall include the value of all property to the extent of the interest therein held as joint tenants with right of survivorship by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth....

26 U.S.C. § 2040(a) (1982). While there are statutory exceptions and complexities in operation not relevant here, the statute by its

**2.** Federal Reserve Banking Regulation, 12 C.F.R. § 217.4 (1977), provides: "Upon the death of any person whose name appears on the time deposit passbook or certificate, a member bank may pay such time deposit before maturity without a reduction of [sic] forfeiture of

interest as prescribed in this paragraph." The parties stipulated that the two banks issuing the certificates of deposit in question adhere to a payment policy, and redeem certificates of deposit upon or after the death of a joint owner

terms is extremely broad in application.[3] Estate taxation under that section is not prevented or affected by state property laws or contract terms which vest ownership in surviving joint tenants immediately upon death pursuant to the original conveyance in joint tenancy. And, it is immaterial that the joint tenancy prevents the decedent's estate from receiving the property or having an enforceable interest.[4] No "transfer" of property, as defined by usual property law concepts, is required. In *United States v. Jacobs*, 306 U.S. 363, 59 S.Ct. 551, 83 L.Ed. 763 (1939), the Supreme Court addressed that point and the principle upon which taxes are imposed under the predecessor statute to section 2040:

> Death duties or excises *imposed upon the occasion of change in legal relationships to property brought about by death* are ancient in origin. Congress has the power to levy a tax *upon the occasion of a joint tenant's acquiring the status of survivor at the death of a co-tenant.* In holding that the full value of an estate by the entirety may constitutionally be included in a decedent's gross estate for estate tax purposes, this Court said: "The question ... is, not whether there has been, in the strict sense of that word, a 'transfer' of the property by the death of the decedent, or a receipt of it by right of succession, but whether the death has *brought into being or ripened for the survivor, property rights of such character as to make appropriate the imposition of a tax upon that result (which Congress may call a transfer tax, a death duty or anything else it sees fit)*, to be measured, in whole or in part, by the value of such rights ...

> "At ... [the co-tenant's] death, however, and because of it, ... [the survivor] for the first time, became entitled to exclusive possession, use and enjoyment; she ceased to hold the property subject to qualifications imposed by the law relating to tenancy by the entirety, and became entitled to hold and enjoy it absolutely as her own; and then, and then only, she acquired the power, not theretofore possessed, of disposing of the property by an exercise of her sole will. *Thus the death of one of the parties to the tenancy became the 'generating source' of important and definite accessions to the property rights of the other ....*"

*Id.* at 367–68 (emphasis added) (footnotes omitted).

■ As the quoted language makes clear, the tax is imposed on the shift in rights occasioned by death. It does not depend, as argued by the estate here, on the status of property as choate or inchoate, forfeitable or nonforfeitable, prior to death. *See also* Treas.Reg. § 20.2040–1(a) (1986) ("A decedent's gross estate includes under section 2040 the value of property held jointly *at the time of the decedent's death* by the decedent and another person or persons with right of survivorship....") (emphasis added). *See generally Estate of Bright v. United States*, 658 F.2d 999, 1001 (5th Cir.1981) (en banc).

■ There is no doubt that there was a shift in rights with respect to the accruing, unmatured interest in question in this case at and by virtue of the decedent's death. For example, the hazard of forfeitability upon early redemption was removed, as

---

without a reduction or forfeiture of accrued interest. R.Vol. V at 3.

**3.** Commentators continue to remark upon the scope, staying power, and anomalies in and arising from the application of this section. *See, e.g.,* B. Bittker, *Federal Taxation of Income, Estates and Gifts* ¶ 125.11 (1984); Lowndes, Kramer & McCord, *Federal Estate and Gift Taxes* § 11.1 at 269 (3rd ed. 1974). *See also* Maxfield, *Some Reflections on the Gift and Estate Taxation of Jointly Held Property,* 34 Tax Lawyer 47–88 (1980).

**4.** The estate attempts to buttress its argument by references to section 2033 of the Code requiring payment to and enforceability by the estate as a prerequisite to taxability. Section 2040 is not controlled by section 2033. It is broader than section 2033 and is specifically *not* dependent upon payment to the estate. Treasury Reg. § 20.2040–1(b) (1986) states that:

> [I]t makes no difference that the survivor takes the entire interest in the property by right of survivorship and that no interest therein forms a part of the decedent's estate for purposes of administration.

was the hazard of severance, and the possibility of losing the complete estate to the other tenant as survivor. Similar rights, and shifting of rights, were identified by the Supreme Court in *Jacobs,* as follows:

> The "grand incident of joint estate is the doctrine of *survivorship,* 'by which, when two or more persons are seized of a joint estate, ... the entire tenancy upon the decease of any of them remains to the survivors, and at length to the last survivor; and he shall be entitled to the whole estate, whatever it may be.' "

While it is true that until the death of decedent here each joint tenant possessed the right to sever the joint tenancy, each was nevertheless subjected to the hazard of losing the complete estate to the other as survivor. Prior to decedent's death, his wife had no right to dispose of her interest by will, nor could it pass to her legal heirs. She might survive and thereby obtain a complete fee to the property with attendant rights of possession and disposition by will or otherwise. Until the death of her co-tenant, the wife could have severed the joint tenancy and thus have escaped the application of the estate tax of which she complains. Upon the death of her co-tenant she for the first time became possessed of the sole right to sell the entire property without risk of loss which might have resulted from partition or separate sale of her interest while decedent lived. *There was—at his death—a distinct shifting of economic interest, a decided change for the survivor's benefit. This termination of a joint tenancy marked by a change in the nature of ownership of property was designated by Congress as an appropriate occasion for the imposition of a tax.*

306 U.S. at 370–71, 59 S.Ct. at 555 (emphasis added) (footnotes omitted).

Furthermore, from a practical standpoint the contingency relied upon by the estate involves much less uncertainty than the estate implies. Because of the Federal Reserve Regulation previously cited, and bank policy, there was never any uncertainty with respect to the fact that the interest would mature at decedent's death, and would be payable to the surviving joint tenants along with the principal. Maturity and payment of the interest at death were never discretionary. They were not controlled by third parties or events external to the joint tenancy. Thus, interest accruing prior to death was subject to a settled expectation and planning by the decedent, and was certainly as attributable to him under the source of consideration rule as the principal of the certificates.

> Taxation, as it many times has been said, is eminently practical, and a practical mind, considering results, would have some difficulty in accepting the conclusion that the death of one of the tenants in each of these cases did not have the effect of passing to the survivor substantial rights, in respect of the property, theretofore never enjoyed by such survivor.

*Tyler v. United States,* 281 U.S. 497, 503, 50 S.Ct. 356, 359, 74 L.Ed. 991 (1930). It is beyond question that decedent's death was the "generating source" of important and definite accessions to the rights of the surviving joint tenants with respect to interest on the certificates of deposit.

The judgment of the district court on this issue is affirmed.

## II.

## CLASSIFICATION OF MULTIPLE JOINT TENANCY BANK ACCOUNT AS A TERMINABLE INTEREST NOT QUALIFYING FOR THE MARITAL DEDUCTION.

■ On April 20, 1965, more than twelve years prior to his death, the decedent with his own funds established a checking account at the Troy State Bank. It is undisputed that the account was established as a joint tenancy, fully cognizable as such under Kansas law,[5] with the decedent, his wife, Ida Jeschke, and their son, Myron, as

---

**5.** Joint tenancies are recognized and defined in Kansas by statute, Kan.Stat.Ann. § 58–501 (1983).

joint tenants with rights of survivorship. *See* Brief for Appellant at 33; R.Vol. at 202–03, 255.[6]

At decedent's death the account contained $32,621.62, all deposited by the decedent. The entire amount was treated by decedent's executor as passing to the surviving widow, as joint tenant, and qualifying in full for the marital deduction pursuant to section 2056 of the Code. On audit the IRS determined that as to the surviving widow the bank account constituted a terminable interest under section 2056(b) of the Code due to the continuing joint tenancy rights of the son, Myron.[7] Therefore, the account did not qualify for the marital deduction.[8]

The estate challenges that determination by the IRS, asserting that Myron was just a convenient signatory who had no legal claim on any of the money in the account during the lives of his parents. Parol evidence directly inconsistent with the joint tenancy terms of the bank account was introduced by the estate to prove that the decedent intended to own all of the account

---

**6.** The account card form has three distinct sections. On the face of the card, marked "Checking Account—Individual," several "authorized signature" lines are provided for the signatures of anyone the originator of the account desires to permit to write checks on the account. No joint tenancy is created by such authorization. On the reverse side of the card there are two more plainly marked sections with signature lines provided under each. One is entitled "Joint Account—Two or More Signatures Required;" and, the other is entitled "Joint Account—Payable to Either or Survivor." It was the latter section which the decedent, Ida, and Myron signed. That section provided as follows:

> JOINT ACCOUNT—PAYABLE TO EITHER OR SURVIVOR
>
> We agree and declare that all funds now, or hereafter, deposited in this account are, and shall be, our joint property and owned by us as joint tenants with right of survivorship, and not as tenants in common; and upon the death of either of us any balance in said account shall become the absolute property of the survivor. The entire account or any part thereof may be withdrawn by, or upon the order of, either of us or the survivor.
>
> It is especially agreed that withdrawals of funds by the survivor shall be binding upon us and upon our heirs, next of kin, legatees, assigns and personal representatives.

| /s/ E.J. Jeschke | /s/ Ida Jeschke |
| --- | --- |
| /s/ Myron Jeschke | |

Plaintiff's Exhibit 5.

**7.** The controlling provisions of the statute in effect in 1977, the year of the decedent's death, are as follows:

SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE
(a) Allowance of marital deduction
For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b) and (c), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.
(b) Limitation in the case of life estate or other terminable interest
(1) General rule
Where, on the lapse of time, on the occurrence of an event of contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—
(A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and
(B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse;
and no deduction shall be allowed with respect to such interest (even if such deduction is not disallowed under subparagraphs (A) and (B))—
(C) if such interest is to be acquired for the surviving spouse, pursuant to directions of the decedent, by his executor or by the trustee of a trust.
For purposes of this paragraph, an interest shall not be considered as an interest which will terminate or fail merely because it is the ownership of a bond, note, or similar contractual obligation, the discharge of which would not have the effect of an annuity for life or for a term.

\* \* \* \* \* \*

26 U.S.C. § 2056 (1976).

**8.** In fact, the IRS disallowed only one-half of the account, $16,310.81, as qualifying for the marital deduction, apparently on the assumption that under Kansas law the rights of each surviving joint tenant was limited to one-half of the account. The legal issues involved here are unaffected by this point.

during his life and then for his surviving spouse to be the sole owner. Because the decedent and his wife were elderly, she did not see well, and for other, similar reasons, the decedent included Myron as a joint tenant for ministerial purposes only. Brief for Appellant at 34–35. The issue turns on the rights of the surviving joint tenants under Kansas law.

The estate recognizes that under Kansas law joint tenancies created by a signed joint tenancy agreement with qualifying statutory language, such as the one here, cannot be collaterally attacked by parol evidence in the absence of fraud or mutual mistake. *See In re Estate of Girndt,* 225 Kan. 352, 590 P.2d 1038, 1041 (1979); *Eastman v. Mendrick,* 218 Kan. 78, 542 P.2d 347, 350 (1975) (quoting *Agrelius v. Mohesky,* 208 Kan. 790, 494 P.2d 1095 (1972)); *In re Estate of Johnson,* 202 Kan. 684, 452 P.2d 286, 295–96 (1969), *modified,* 203 Kan. 262, 452 P.2d 301 (1969); *Edwards v. Ledford,* 201 Kan. 518, 441 P.2d 834, 839 (1968); *In re Estate of Smith,* 199 Kan. 89, 427 P.2d 443, 447–48 (1968). *See also In re Estate of Powell,* 222 Kan. 688, 567 P.2d 872, 875 (1977); *Johnson v. Capitol Fed. Sav. & Loan Ass'n,* 215 Kan. 286, 524 P.2d 1127, 1132 (1974). Faced with overwhelming Kansas authority on that point, the estate takes a narrower tack. It acknowledges that a three-way joint tenancy exists but asserts that parol evidence of decedent's intent can be introduced to establish, contrary to the written agreement, that Myron's legal claim to funds comprising the joint tenancy estate was zero during the lives of his parents. The estate reasons that if Myron could not touch the account for his own benefit the surviving widow's interest could not have been terminable. The position is summarized by the estate as follows:

It must be noted that at no time have appellants ever sought to vary terms of the valid joint tenancy bank account contract. Appellants have simply established by parol evidence the relative ownership interests of the joint tenants, including the decedent. This is proper under *Walnut Valley State Bank v. Stovall,* 223 Kan. 459, 574 P.2d 1382, [1978]

and *Purma v. Stark,* 224 Kan. 642, 585 P.2d 991 [1978].

Reply Brief for Appellants at 13.

The principal cases on which the estate relies, *Walnut Valley State Bank* and *Purma,* involved garnishment rights of judgment creditors against joint tenancy interests of a debtor. Referring to Kan. Stat.Ann. § 58–501 (1983) dealing with the "execution, levy and sale of the [joint tenancy] interest of a judgment debtor," the Kansas Supreme Court held in those cases that "the only interest in the account which can be reached by garnishment is the interest actually owned by the garnishment debtor." *Purma,* 585 P.2d at 993. Both cases focused on actual contributions by the judgment debtors to joint tenancy accounts, alternately referring to interests in such contributions as equitable, beneficial, and ownership interests in the joint tenancy account, all of which, in turn, refer to the "interest of a judgment debtor" language of the statute.

The circumstances of the case before us are so different from those addressed by the Kansas Supreme Court in *Walnut Valley State Bank* and *Purma* as to merit only slight attention. Neither the surviving widow nor the son, Myron, contributed anything to the bank account. They are surviving joint tenants. No debtor-creditor relationship is involved.

The question is whether Kansas law permits Myron's rights in and to the joint tenancy estate, as set forth in the written joint tenancy agreement, to be diminished to zero by parol evidence of decedent's intent. The estate cites no Kansas case in direct support of that proposition, and, as indicated, *Walnut Valley State Bank* and *Purma* are too remote to be helpful. We find the other Kansas cases cited above to be persuasive of the contrary proposition; that is, in the absence of fraud or mistake (neither of which is alleged here), terms of the written joint tenancy agreement prevail despite parol evidence of a different intent. Under terms of the written agreement Myron, as a surviving joint tenant with decedent's widow, had the power to terminate the interest of decedent's widow in the joint

bank account. Accordingly, the widow's interest was a terminable interest as defined by section 2056(b)(1) of the Code. We hold, therefore, that the joint tenancy bank account did not qualify for the marital deduction.[9]

## III.

### EFFECT ON MARITAL DEDUCTION OF FAMILY AGREEMENT TO PAY EXPENSES CHARGEABLE TO THE SURVIVING SPOUSE'S SHARE OF DECEDENT'S ESTATE

■ Following decedent's death, his surviving spouse elected, pursuant to Kan. Stat.Ann. § 59–603 (1983), to take against decedent's will, deriving her share of the estate under the intestate succession provisions of Kansas law. *Id.* at §§ 59–504, 59–505. Among other things, that statutory scheme provides that the surviving spouse's share of the property will be subject to "the payment of reasonable funeral expenses, expenses of last sickness and costs of administration, taxes, and debts." [10] *Id.* at § 59–502; *First Nat'l Bank of Topeka, Kansas v. United States,* 233 F.Supp. 19, 23 (D.Kan.1964); *Spurrier v. First Nat'l Bank of Wichita,* 207 Kan. 406, 485 P.2d 209 (1971). *See also In re Estate of Hawes,* 235 Kan. 697, 683 P.2d 1252, 1257 (1984); *Jackson v. Jackson,* 217 Kan. 448, 536 P.2d 1400, 1406–07 (1975).

In order to see their mother better provided for, decedent's children agreed among themselves and with their mother (the surviving spouse) that they would pay the mother's share of administration expenses and inheritance taxes, rather than have such amounts taken from her share of the estate. R.Vol. V at 30–31, 45.

Despite that agreement, on audit of the decedent's estate tax return the IRS reduced the marital deduction by $9,408.81 representing the surviving spouse's share of administration and funeral expenses, and $1,383.26 representing the surviving spouse's share of the state inheritance tax. R.Vol. II at 256. The estate challenges that adjustment.

■ It is an established general rule, uncontested here, that the marital deduction provided by section 2056 of the Code is reduced by expenses of administration and similar obligations which must or may be paid out of property passing from the decedent to the surviving spouse. 26 U.S.C. § 2056(b)(4) (1976); Treas.Reg. § 20.-2056(b)–4(c) (1986); Kan.Stat.Ann. § 59–502 (1983). *See Greene v. United States,* 476 F.2d 116, 118 (7th Cir.1973); *Murray v. United States,* 687 F.2d 386, 392–93 (Ct.Cl. 1982); *Estate of Wycoff v. C.I.R.,* 506 F.2d 1144, 1147–49 (10th Cir.1974), *cert. denied,* 421 U.S. 1000, 95 S.Ct. 2398, 44 L.Ed.2d 667 (1975); *First Nat'l Bank of Topeka,* 233 F.Supp. at 23. It is immaterial that such expenses may actually be paid out of nonmarital share funds, so long as there exists discretion or an obligation to charge the marital share. *See Murray,* 687 F.2d at 393 n. 7; *Wycoff,* 506 F.2d at 1148–49. If, however, a testator specifically provides by will that administration and similar expenses *not* be paid out of the surviving spouse's share qualifying for the marital deduction, then the marital deduction is not reduced by its "share" of the expenses. *See* Kan.Stat.Ann. § 59–1405 (1983); *Wycoff,* at 1149–50; *Thompson v. Wiseman,* 233 F.2d 734, 737 (10th Cir.1956); *In re Estate of West,* 203 Kan. 404, 454 P.2d 462, 465 (1969).

9. In April 1978 Myron signed a written disclaimer, disclaiming any interest in the account and subsequently his mother signed a new signature card as the sole signatory. R.Vol. V at 46–47, 50; Defendant's Exhibit A. As a result of this disclaimer, Myron was assessed a gift tax by the IRS which resulted in a reduction in his Unified Gift Tax Credit. In this case, he appeals that holding. Because we hold that Myron was a joint tenant in the account we need not reach the issue regarding restoration of Myron's Unified Credit, or our jurisdiction to hear that question. Resolution of these issues rested entirely upon a determination that Myron did not have a joint tenancy interest in the account at the decedent's death.

10. The term "taxes" does not include the imposition of federal estate taxes on property qualifying for the marital deduction. *First Nat'l Bank of Topeka v. United States,* 233 F.Supp. 19, 23 (D.Kan.1964). However, this appeal concerns only the imposition of state inheritance taxes on marital property.

As indicated, the surviving spouse in this case elected to take under state law which, in addition to prescribing the surviving spouse's share of the estate, charges the widow's portion with its share of administration and other expenses. The estate argues that the family agreement overrides the application of state law regarding expenses. It reasons "that a Family Settlement Agreement, being the equivalent of or complete substitute for testamentary provision, may provide that assets constituting a claimed marital deduction shall be free from any liability for payment of a portion of inheritance taxes and expenses of administration, including funeral bill." Brief for Plaintiffs-Appellants at 43. In other words, the estate contends that power similar to that of a testator devolves upon the family notwithstanding the election to have state law govern the distribution of assets and allocation of expenses.

As with the other issues in this case, there is no authority whatsoever directly supporting the estate's argument that post-death agreements between the beneficiaries can override state law. What authority we have found suggests a contrary conclusion. *See, e.g., Underwood v. United States,* 407 F.2d 608, 610 (6th Cir.1969) (dispute over validity of a charitable deduction). The estate's position on this issue borders on the frivolous. State law subjecting the statutory marital share to expenses controls, unaffected by post-death agreements among the beneficiaries. We hold that the marital deduction was properly reduced in the amount of the expenses and taxes in question.

For the reasons stated herein, the judgment of the district court is *affirmed.*